ALBERT GANDY V. THE STATE.

No. 20401. Delivered May 31, 1939.
Rehearing Denied June 23, 1939.

The opinion states the case.

*C. S. Farmer,* of Waco, for appellant.

*Lloyd W. Davidson,* State's Attorney, of Austin, for the State.

KRUEGER, Judge.

The conviction is for an assault with intent to murder without malice. The punishment assessed is confinement in the state penitentiary for a term of one year.

The record discloses that appellant (Albert Gandy), Bill Gandy, Earl Rhodes and Hubert Harris all lived in the same community in Limestone County. It appears that each of them were engaged in farming. Hubert Harris, the injured party, had grown some watermelons. On the night prior to the day of the difficulty, Harris saw two men in his watermelon patch and when they discovered him, they undertook to leave, but he invited them to stay and help themselves to as many melons as they desired. He instructed them, however, not to carry any melons over into the Gandy premises. One of the two men then remarked that he was glad it was neither of the Gandy boys. Some person told Bill and Albert Gandy on the following day before noon that on the previous night, Hubert Harris had discovered two men in his watermelon patch and had held them up and with a shotgun and stated to them: "I am mis-

taken in the party; I didn't know who you boys were; I thought it was them God damned Gandys. I am looking for them and it is a good thing you did not run."

On the next morning, Hubert Harris carried a truckload of melons to Groesbeck, intending to sell them. Appellant and his brother Bill, accompanied by Earl Rhodes, were also in town. Rhodes reported to Bill Gandy, in the presence of appellant, the remarks above set out. After a short consultation in the drug store, the three parties hurriedly walked down the street to where Harris was parked and Bill Gandy remarked: "Hubert Harris, if you want to shoot some of the Gandys, here we are."

Harris then struck Bill Gandy and according to some of the witnesses knocked him to his knees; others stated that he staggered backward and that Harris followed him up to a point nearly across the street striking at him with his fist, while appellant ran up and cut Harris in the back, side and other parts of the body. Bill Gandy also used a knife, and in doing so remarked: "Come on, let's finish the sonofab———."

Appellant's defense was that of self-defense and defense of his brother, Bill, against a violent assault upon them by the injured party.

By bill of exception number one, appellant complains of the action of the court in permitting the State to exhibit to the jury the exact location of the wounds on the person of the injured party and the extent thereof. The only objection urged thereto is that there is no dispute as to the location of the wounds upon the body; that the doctor had already described to the jury the location of the wounds, as well as the extent thereof.

The court inquired of appellant's counsel if, by his objection, he intended to admit that the injuries suffered by the prosecuting witness were serious, to which counsel replied in the negative. Appellant, by his plea of not guilty, put the State upon proof of every material fact necessary to convict, including the nature, character and location of the wounds, which might enable the jury to determine the intent of the defendant, and when he declined to admit the serious nature of the wounds, that issue became a controverted one. The fact that the attending physician testified to the location of the wounds on the body and their serious nature would not, of itself, render inadmissible their exhibition before the jury under such circumstances. The bill fails to show that the wounds were of an ugly, ghastly or shocking appearance such as might have a tendency to prejudicially affect him. Under the showing

made in this bill, we do not believe reversible error was committed. In support of what we have said, we refer to the following authorities. See Harris v. State, 293 S. W., 822; Runnels v. State, 19 S. W. (2d), 322.

Bills of exceptions numbers two and three reflect the following occurrence. The State, on cross-examination of appellant, propounded to him the following questions: "Now, Bill Gandy is quite a 'boozer' himself and 'gun-toter', a rower and fusser and fighter?"

Appellant objected thereto and the court promptly sustained the objection. Thereupon the State, through its counsel remarked: "Does the court hold that I cannot show what knowledge, if any, this witness had of Bill Gandy's proclivities and characteristics?" To which the court replied: "Yes, sir."

Appellant again objected and the court again sustained it. Bill Gandy was not on trial and was not a witness; nor had his reputation been put in issue.

If the witness, Hubert Harris, had been on trial for the murder or an asault with intent to murder Bill Gandy and had interposed a plea of self-defense, then it might have been permissible to have shown Bill Gandy's traits of character as indicated by the interrogatories, provided Harris knew or had heard thereof prior to the difficulty. But in the instant case, Albert Gandy was on trial, and we confess that we are unable to understand upon what theory of the case the inquiry complained of was material and admissible against the appellant. That the inquiry was prejudicial to appellant appears to us to be self-evident. The trial court seems to have considered it so, and did all he could to remedy the error and withdraw the evil effect thereof from the jury; but in our opinion, this could not be effectively done. The unrelenting efforts of prosecuting attorneys to vigorously prosecute those who have offended against the laws of this State are highly commendable, but in doing so they should not let their zeal carry them so far from the established rules of procedure as will be tantamount to a denial of a fair trial to the accused.

As a general rule, where the court promptly sustains an objection to improper questions, it will not require a reversal unless the question was not propounded in good faith, or it is of such harmful nature that in the opinion of this court the evil effect thereof could not effectively be obliterated from the minds of the jury. It is our opinion that the instant case

presents such a situation. Consequently, we feel compelled to reverse the judgment.

Appellant also complains of the court's charge. We have examined the same in the light of the objections addressed thereto and reached the conclusion that the same is more favorable to him than he was really entitled to under the facts.

There are other questions raised which we do not deem necessary to discuss at this time.

For the error herein pointed out, the judgment of the trial court is reversed and the cause remanded.

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.

### ON MOTION FOR REHEARING.

HAWKINS, Judge.

The prosecuting officers of Limestone County have filed in behalf of the State a motion for rehearing based primarily on the proposition that the trial court should not have sustained objection to the question regarding Bill Gandy's proclivities as a boozer, etc.

The near approach of adjournment for a term renders it impracticable to elaborate on the subject. The learned trial judge sensed the harm to appellant from the question and tried to eliminate it. The question was somewhat in the form of the assertion of a fact. We remain of opinion that the error could not be cured by the attempt to withdraw it.

If an inference may be drawn from our original opinion that we intended to intimate that the prosecuting officer was not acting in good faith when he propounded the question complained of we now disclaim any such intention. Our opinion was based upon the proposition that in the case before us a situation was presented where the trial court could not by a withdrawal of the question cure the evil effect thereof.

The State's motion for rehearing is overruled.