BEN WILSON V. THE STATE.

No. 21318. Delivered December 11, 1940.

The opinion states the case.

*Wade & Wade,* of Beeville, for appellant.

*Lloyd W. Davidson,* State's Attorney, of Austin, for the State.

KRUEGER, Judge.

Appellant was convicted of an assault to murder without malice. His punishment was assessed at confinement in the state penitentiary for a term of three years.

The State's testimony, briefly stated, shows that on the night of December 23, 1939, Jose Chapa, the injured party, accompanied by Pedro Garcia and Ben Rodriguez, went from the W. O. W. Hall to the Casino Club located in the town of Beeville in Bee County. While these three men were out at their car drinking a bottle of beer the appellant, Ben Wilson, came from the club room and went to where these three parties were, and without any apparent cause, assaulted Chapa with a knife, inflicting serious wounds upon him. Dr. Miller, who treated the injured party at the Thomas Memorial Hospital, described the wounds and the location thereof on the body of Chapa as follows: "He had a mean slash across the right side of his neck, cuts on his hands and a stab wound in the abdomen. They were such wounds as would be calculated to produce death or serious bodily injury."

Appellant admitted cutting Chapa with a knife, but contended that he did so in self-defense. He said that when he went around to the back of their car towards the highway, Chapa, the injured party, cursed him; that he then came to the front of their car when Chapa threw a beer bottle at him; that he ducked, drew his knife, and when Chapa advanced upon him he cut him; that they clinched and fell to the ground, during which time he continued to cut Chapa until they were separated.

Appellant addressed quite a number of objections to the court's charge relative to the law of assault with intent to murder, both with and without malice, but in view of the fact that the jury found him guilty of assault to murder without malice, all of the objections addressed to the court's instruction on the law of assault to murder with malice passed out of the case. Consequently we need only consider the objections addressed to the court's charge on the law of assault to murder without malice and self-defense.

The court's instruction on assault to murder without malice reads as follows: "But, if from the evidence you believe beyond a reasonable doubt that the defendant, Ben Wilson, on or about the 23 day of December, 1939, in the County of Bee and State of Texas, with a deadly weapon, to-wit, a knife, and without malice, as that term has been hereinbefore defined to you, did assault the said Jose Chapa with intent, then and there to kill the said Jose Chapa, you will find the defendant guilty of an assault with intent to murder, and say so by your verdict and assess his punishment at confinement in the penitentiary for a term of not less than one nor more than three years, as you may determine and state in your verdict."

Appellant's main objection to this charge is that the court, in connection with said instruction, did not apply the doctrine of reasonable doubt. We note, however, that in the succeeding paragraph the court instructed the jury as follows: "If you believe from the evidence that the defendant is guilty of an assault, but have a reasonable doubt as to whether such assault was with intent to murder, then you will acquit him of that offense and next consider whether he is guilty of an aggravated assault."

This was a direct instruction to the jury that if they had a reasonable doubt as to whether the assault was made with an intent to murder, then they should acquit him of that offense and next consider whether he was guilty of an aggravated assault. In our opinion, the jury could not have been misled by the failure of the court to incorporate the doctrine of reasonable doubt in his instruction relative to an assault to murder without malice. The court was not required to wind up every paragraph of the charge with the instruction that unless they so found or if they had a reasonable doubt thereof to acquit him. Texas Jur. Vol. 24, p. 609, Sec. 118, states the rule as follows: "If the instructions apply the doctrine of reasonable doubt to the whole case, it is not ordinarily necessary to restate the rule in connection with each feature of the case or in each paragraph of the charge." See cases cited under note 6.

Appellant also objected to the court's charge on the law of self-defense on the ground that it limited his right of self-defense to actual or apparent danger of suffering death or serious bodily injury. We have examined the court's charge in the light of the objections addressed thereto but find no such limitation therein. The court clearly and definitely instructed the jury that if from the acts of the said Jose Chapa or from his words, coupled with acts, there was created in the mind of the defendant a reasonable apprehension that he was in danger of suffering bodily injury at the hands of Jose Chapa, then the defendant had a right to defend himself against such danger or apparent danger; and it is not necessary to the right of self-defense that the danger should in fact exist, but if it reasonably appeared to the defendant at the time, viewed from his standpoint, that such danger existed, he would have the same right to defend against it that he would if the danger were real; and a party so unlawfully attacked is not bound to retreat in order to avoid the necessity of killing his assailant. If the defendant committed the assault as a means of defense, believing at the time he did so, if he did so, that he was in

danger of suffering bodily injury at the hands of Jose Chapa, the jury should acquit him. We think this was a sufficient instruction in that it fully and fairly protected the defendant in his legal right of self-defense as against any attack or apparent attack by Jose Chapa.

By Bill of Exception No. 4 appellant complains of the action of the trial court in limiting the appellant's right of self-defense to the theory that he was attacked only by Jose Chapa and did not instruct the jury that the defendant had a right to defend himself against an attack by both Jose Chapa and Pedro Garcia or either of them; that before the court presented his charge to the jury appellant objected thereto in writing on the ground that defendant was entitled to a charge affirmatively stating that he had a right under the law to use all means at his command to protect himself against an assault, actual or apparent, at the hands of Jose Chapa and Pedro Garcia. The objection was overruled by the court and appellant excepted. The court certifies that defendant would be entitled to such a charge if the facts were such as showed that Jose Chapa and Pedro Garcia were advancing towards the defendant; that he had a right under the law to use all the means at his command to protect himself against an actual or threatened assault by either or both of them. We think the evidence is sufficient to raise the issue.

Hernando Cortez testified that there was a pretty good crowd at the Casino Club at the time; that when he heard that Ben Wilson was fighting he went out there within a short distance of where the parties were engaged in the fight; that all three of them were up against the fence, but he could not tell who they were out there in the dark; that he found out afterwards who the two men were that Ben was fighting with up against the fence.

Appellant testified that he was at the Casino Club on the night in question; that when he started to go home he walked by the car at which Jose Chapa, Pedro Garcia and Ben Rodriguez were standing; that he heard Chapa make some remark concerning him; that he then started back to the Casino Club to get Mike Cortez to take him home because he was afraid that Chapa might jump on him; that when he walked around the front of the car and started to go to the Casino Club, Chapa threw a beer bottle at him; that when the beer bottle was thrown at him, he went down to the ground on his right knee, drew his knife from his pocket, and when Chapa rushed at him, he cut him on the arm. Then both Chapa and Pedro Garcia caught hold

of him. Garcia caught him by the left arm and Chapa caught his right arm, and they pushed him backwards to the fence; that during this time Chapa was hitting him in the left side. Then Mike Cortez came out and told Chapa and Garcia to turn him loose. They did so, and got in their car to leave. Appellant said he was afraid of them because they were both as large as, if not larger than he was. He further testified: "I didn't say a while ago that at that time he had me by the right arm like this (indicating) and that the only way I could stab him was by swinging at him like that (indicating), but said that I was standing like that (indicating) and he had my arm like that (indicating) and that I cut him like that (indicating). * * * I had slapped him and cut him in the neck and shoulder at the same time. Then Pedro Garcia came in and caught my left arm like that (indicating) and Jose had hold of my right arm, and we went down onto the fence. * * * I was not trying or intending to kill Jose at the time I cut him, but was just trying to get a-loose from them."

We think that the evidence is sufficient to raise the issue that appellant had the right to defend himself against the attack of both Chapa and Garcia, or either of them, and the court should have responded to the appellant's objection. When there is evidence, viewed from the accused's standpoint, that he was in danger of an unlawful attack or a threatened attack at the hands of more than one assailant, the court should instruct the jury that he had a right to defend himself against either or both of them. In support of the views herein expressed we refer to the following cases: Petty v. State, 70 S. W. (2d) 718; Smart v. State, (No. 21,301), opinion delivered December 4, 1940, but not yet reported (page 664 of this volume).

Bill of Exception No. 3 reflects the following occurrence: While Dr. Miller was testifying on behalf of the State, the court permitted the injured party, Jose Chapa, to be brought into the court room, undress himself and exhibit the wounds on his body to the jury. The court also permitted Dr. Miller to point to the wounds on the body of the injured party and describe the extent of the injuries and the seriousness thereof. The wounds so exhibited were large, ugly and discolored scars. Appellant objected to this procedure for the reason that such evidence was highly prejudicial; that there was not dispute as to the cutting; that the wounds were serious and dangerous; that the exhibition of the wounds could serve no good purpose; was prejudicial and injurious to the defendant for the reason that there was no issue before the jury as to the extent of the injuries or as to who

inflicted the same, which objections were overruled by the court and the defendant then and there excepted.

If appellant had admitted the seriousness of the wounds, a different question might have been presented and the case might have come within the rule announced by Judge Davidson in Newman v. State, 213 S. W. 651, 85 Texas Cr. R. 556, and Chapman v. State, 66 Texas Cr. R. 489, 147 S. W. 580. But this he did not do. By his plea of not guilty, the State was required to prove the seriousness of the wounds in order to establish its case. That appellant contested the seriousness of the wounds is shown by the fact that when the State proved by the sheriff the location and character of the wounds on the body of the injured party, appellant objected thereto on the ground that the sheriff, being a lay-witness, could not express an opinion relative to the seriousness of the wounds. We believe that the facts of this case bring it within the rule announced by this court in that of Harris v. State, 106 Texas Cr. R. 539, in which this Court, speaking through Judge Hawkins, said: "Reed was permitted, over objection, to remove his clothing and exhibit to the jury scars left on his body by the wounds inflicted by appellant. These scars were several in number, being of an ugly and discolored appearance. The objection urged was that physicians present could testify to the nature and character of the wounds and that their exhibition to the jury tended to solve no issue in the case. This objection cannot be sustained. The State was seeking conviction of aggravated assault, based on the claims that the wounds inflicted were of a serious nature. Appellant by his plea of 'not guilty,' had put the State upon proof of every material fact necessary to convict. One of these facts was the nature of the wounds. The State could establish this fact by any legitimate evidence at hand and appellant could not dictate that the State proceed in any particular manner to make out its case. The wounds exhibited enabled the jury to pass upon the question as to whether serious bodily injury had been inflicted. The fact that physicians could testify, and did later testify, that Reed was confined in the hospital ten days and that the wounds were of a serious nature would not render inadmissible their exhibition before the jury."

It is observed in this connection that the evidence shows the assault was committed with a pocket knife. There is no evidence as to the size of said knife or the length of the blades. The State was compelled to resort to proof as to the wounds inflicted to show the deadly character of the weapon used by appellant.

Appellant, in his brief, refers us to the case of Gandy v. State, 137 Texas Cr. R. 412, in support of his contention. It will be noted that in the discussion of the question in that case, the court inquired of appellant's counsel if by his objection he intended to admit that the injuries suffered by the prosecuting wi'ness were serious, to which he replied in the negative; and when he declined to admit the serious nature of the wounds, that issue became a controverted one. Consequently the exhibition of the wounds to the jury, under the circumstances became admissible, notwithstanding the fact that the attending physician testified to the location of the wounds on the body and the serious nature thereof. Hence, that case does not support the appellant's contention, nor does the case of Smith v. State, 129 Texas Cr. R. 273, do so. We, therefore, overrule his contention.

Appellant objected to the testimony given by the sheriff to the effect that he examined the wounds on the body of Chapa; that they were such as were calculated to produce death or serious bodily injury. While ordinarily a layman would not be qualified to express an opinion relative to the seriousness of wounds, yet, the sheriff's testimony was in substance and effect but a repetition of that given by the doctor who treated the injured party. The jury already had before them testimony to the same effect given by the doctor which was not controverted. Consequently, the admission of the testimony complained of was a harmless error. From 19 Texas Jur. p. 176, sec. 116, we take the following quotation: "It is a general rule also that the admission of improper evidence does not constitute reversible error if the same facts were proved by other and proper testimony or by evidence which was not objected to. This rule has been applied many times in connection with the receipt of objectionable opinion evidence given by non-experts, etc." See Norton v. State, 88 S. W. (2d) 1045.

Bill of Exception No. 5 reflects the following occurrence: Ben Rodriguez, who testified for the defendant, described the difficulty as he saw it. His testimony was at variance with what he had theretofore stated to Alex Cox in the presence of Wachtendorf, a deputy sheriff. Thereupon the State introduced the deputy sheriff and proved by him that on the day before the trial began, Ben Rodriguez made a statement to Alex Cox, the District Attorney, in the presence of the said Wachtendorf, which was at variance with his testimony, to which appellant objected on the ground that it was a transaction out of the presence and hearing of the defendant; that it was hearsay and therefore no proper predicate was laid for said question. There-

upon, the District Attorney, in the presence of the jury stated to the court that it was offered for the purpose of impeachment, whereupon the court overruled the objection and made the following remarks: "It (meaning the testimony of the witness Wachtendorf) is admitted for impeachment purposes only and the Court is going to limit it to that, and the jury will not consider it for any other purpose except to impeach the witness, Ben Rodriguez."

We think this remark by the court was a comment on the weight of the testimony which is inhibited by the statute, Art. 707, C. C. P.

All other matters complained of have been carefully considered by us and are deemed to be without merit.

In view of another trial, we would suggest that the court do not assume that the knife used by appellant was a deadly weapon but to submit the issue to the jury as to whether or not the knife, from the manner of its use, was calculated to produce death or serious bodily injury.

For the error herein pointed out, the judgment of the trial court is reversed and the cause remanded.

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.