## Rube Griffith v. The State.

No. 21616. Delivered May 14, 1941.
Motion for Rehearing Denied (Without Written Opinion) June 25, 1941.

The opinion states the case.

*Sam B. Spence* and *J. Earle Kuntz*, both of Wichita Falls, for appellant.

*Spurgeon E. Bell,* State's Attorney, of Austin, for the State.

GRAVES, Judge.

Appellant was convicted of an assault to murder with malice upon Chester Brogdon, and was by the jury sentenced to a term of three years in the State penitentiary.

The facts as developed show that appellant had a daughter named Ruby, twenty-three years of age, who was the wife of Fred Webb. That this daughter had been keeping company with Brogdon while her husband was absent from home, and such association was not approved by her father, the appellant. That

at a dance just prior to the time of the trouble here under investigation, the appellant, finding Brogdon in company with his married daughter, remonstrated with Brogdon and told him that if he continued his conduct with Ruby it would result in breaking up her home. Brogdon claims to have told appellant that if Ruby would let him, Brogdon, alone, he would let Ruby alone. Ruby resented what she termed her father's interference with her business, and probably had some words with him on such occasion. This took place on Saturday night. On the following Monday night appellant, who lived about three miles from his daughter's home, got in his truck and drove near the daughter's two room house, and parked the truck about one hundred yards away, and came up to the house, in which there were no lights, and looked through the window. He saw Brogdon inside light a match, and he then came in the front door of the house. Appellant claimed that his daughter, dressed in shorts, met him at the door of the darkened house and struggled with him, and attempted to keep him from coming in, and told him not to come in. He finally got in the house, and somebody ran against him and shoved him around, and he pulled his pistol and shot four times inside the house, shooting, he said, at Brogdon's legs and not trying to hit his body.

Brogdon was later found in the yard with a bullet in his back. It had struck the twelfth vertabrae, and he was permanently paralyzed from the waist down. Appellant then came out of the house and asked two boys to take his truck and carry the injured person to a hospital. These boys finally borrowed a car and did take such person to a hospital. Appellant claimed all the shots were fired in the dark and in the scuffle in the house; however the screen door gave evidence that at least some of the shots were fired from inside the house outward.

Bill of exceptions No. 1 relates to the testimony of Dr. Harrell, the physician who was treating the injured party, wherein he testified relative to the injuries received by such party, and to the fact that they were permanent, and had resulted in a permanent paralysis of the body from the waist down.

When charged with a specific intent to kill, it becomes the duty of the State to show such intent, see McCoy v. State, 102 S. W. (2d) 206, and a plea of not guilty puts the State upon proof thereof. See Gandy v. State, 129 S. W. (2d) 661. There was a denial of any intent to kill upon appellant's part and a

claim that he shot down at Brogdon's legs. In such event we think the testimony as to the actual location and result of the wound from the doctor was admissible. See Runnels v. State, 19 S. W. (2d) 322; Harris v. State, 293 S. W. 823.

It is also to be noted that the physician did testify without objection that the witness would have to be assisted into and out of the witness chair, and surely the jury could not avoid seeing the witness as he offered his testimony.

It is true, however, that the careful trial court had the jury retired when the injured party was brought into the courtroom on a stretcher and placed in the witness chair, and they were again retired when the witness was carried from the court room.

A further bill of exceptions appears because of the fact that the stretcher upon which the injured party was brought into the court room remained in the court room while the witness was on the stand. The court qualifies this bill by saying that such cot was placed outside the rail near the end of the jury box; and that the doctor had testified that he (the injured party) was paralyzed from the waist down and could not walk.

The jury already knew that Brogdon could not walk, and that such condition came from the bullet fired into his back by appellant, and naturally, being unable to walk, some one would have to carry him and place him in the witness chair. Evidently knowing such, we do not think that the presence of the stretcher in the court room was of sufficient importance to be called a seriously harmful error.

From the record presented we see no serious error evidenced herein. The judgment is therefore affirmed.