## BONNIE LEE LOUKS v. THE STATE.

No. 23060. Delivered February 7, 1945.

The opinion states the case.

*H. R. Bishop,* of Fort Worth, for appellant.

*Ernest S. Goens,* State's Attorney, of Austin, for the State.

HAWKINS, Presiding Judge.

Conviction is for robbery, punishment assessed being thirty-five years in the penitentiary.

No criticism is found of the court's instruction to the jury, nor is the sufficiency of the evidence questioned.

It is alleged in the indictment that appellant assaulted Joyce Swinford, and by said assault and violence put her in fear of life and bodily injury, and thereby robbed her of the rings and other property described in the indictment.

The statement of facts reflects the following: Appellant and her husband lived in a one-room house in the edge of Fort Worth, Texas. Mrs. Swinford was employed as a waitress in a cafe, working from 6 A. M. to 2 P. M. On the day in question she went from her home about 9 o'clock to the cafe where she worked to eat supper. She was sitting alone at a table and appellant and her husband were at an adjoining table. A number of soldiers came into the cafe and appellant's husband asked Mrs. Swinford to join them at their table. The parties had not previously met. Mrs. Swinford was asked to join the Louks in a bottle of beer, which she declined, informing them that she worked there and that employees were not allowed to drink on the premises. At the Louks' suggestion she went with them across the street to another cafe where they all had beer. While there appellant suggested that Mrs. Swinford go with them to their home. Some friend of Mr. Louks had come into the cafe and Mr. Louks asked him to drive them to the Louks home, which he did. He did not get out of the car. Mrs. Swinford testified that after they went into the house the Louks each drank a small glass of rum, but she drank none. In her evidence appellant claimed that Mrs. Swinford also drank some rum. After a visit Mrs. Swinford suggested it was time for her to go. Mr. Louks said he would go to a neighbor's and call a taxi. All three of the parties went outside the house. Mr. Louks had told Mrs. Swinford there was a sex-maniac living in the community, and appellant pointed out the house in which said party was supposed to live. Mrs. Swinford started to step back in the house when appellant struck her on the head with a flashlight and knocked her down. At

this point Mr. Louks grabbed Mrs. Swinford with one hand and put the other over her mouth. The two of them dragged her into the house and Mr. Louks hit her on the head and about the face four or five times with a hammer. Mr. Louks and appellant then took her rings, watch, clothes, bracelet, purse and its contents. They removed all her clothing except a slip. As she lay on the bed with her body exposed Louks said, "Look how pretty and white her body looks. I think I'll have an intercourse." Appellant told him he was not going to do it; that she (Mrs. Swinford) was dead, and that if he did that to a dead woman she would have nothing further to do with him. Louks then in appellant's presence injected a broom handle into both the vagina and rectum of Mrs. Swinford. Louks then suggested that they take the body down to the railroad tracks and leave it. Appellant agreed. Louks took hold of the wrists and appellant the feet and they dragged Mrs. Swinford across a road and under a wire fence towards the railroad for about 250 feet. Appellant then said, "Let's be sure she is dead," to which Louks replied, "Oh, hell, she is dead. You can tell by looking at her." He then said "turn her over." They turned her on her back, appellant struck her over the heart twice with some instrument and Louks kicked her in the face, fracturing the jaw and breaking out two teeth. From the time Mrs. Swinford was first struck on the head with the flashlight until the end of the heinous cruelty inflicted upon her she never lost consciousness, but feigned death. The jury may well have concluded from the evidence that had she done so further injuries would have been suffered which would have resulted in her death. When Mrs. Swinford was able to raise herself up she made her way to a nearby house and an ambulance was called and she was taken to the hospital.

A singular thing about the case is that appellant in her confession and her evidence on the trial practically admits every fact testified to by Mrs. Swinford. She did deny seeing Louks use the broom handle, claiming that at the time she was under Louks' directions examining the contents of Mrs. Swinford's purse.

The only defense interposed was that whatever appellant did was by command and persuasion of her husband, thus bringing into application Art. 32 P. C., which is as follows: "A married woman who commits an offense by the command or persuasion of her husband shall in no case be punished with death, but may be imprisoned for life or for a term of years, according to the nature of the crime; and in cases not

capital she shall receive only one-half the punishment to which she would otherwise be liable."

The court charged said statute and the jury found that appellant did act under the command and persuasion of her husband.

Appellant brings forward four bills of exception in which he complains because Mrs. Swinford was permitted to exhibit to the jury the scars on her head and face resulting from the assault and violence in perpetrating the robbery. Appellant's objection was that there was no controversy over the location of the scars nor of the scars themselves, and that it would be prejudicial to exhibit them to the jury and would shed no light on any issue involved. Appellant relies on Mahanney v. State, 95 Tex. Cr. R. 443, 254 S. W. 946 and Kazee v. State, 116 S. W. (2d) 731. Expressions are found in those cases which support appellant's position, but they are not thought to be in harmony with the following cases. McMurrey v. State, 168 S. W. (2d) 858; Searcy v. State, 89 Tex. Cr. R. 550, 232 S. W. 799; Runnels v. State, 113 Tex. Cr. R. 207, 19 S. W. (2d) 322; Harris v. State, 106 Tex. Cr. R. 539, 293 S. W. 822; Gandy v. State, 137 Tex. Cr. R. 412, 129 S. W. (2d) 661; Wilson v. State, 140 Tex. Cr. R. 424, 145 S. W. (2d) 890. As was said in several of the cases above cited the bills fail to show that the scars were ugly and of such a nature as to inflame the mind of the jury. We discover nothing which would justify us in holding that the exhibition of the scars would call for a reversal of this case. One of the officers had testified that at the Louks' home they found blood on the bed and floor, table, door facing, on the outside door facing, on the outside of the house, on the back door, and a half of a slip with blood on it outside but close to the house. The witness at the house to which Mrs. Swinford made her way testified that she had nothing on "but part of a slip, badly torn, and her body much exposed and she was covered with blood * * * blood was all over her, and she appeared weak and exhausted, and could hardly talk or stand up."

The only other bill complains of the court admitting against this appellant evidence of what her husband did with the broom handle,—as already related in this opinion, the objection being that it would shed no light on the case and that the offense of robbery had already been completed. It was the State's position that appellant and her husband were principals in the robbery and what was done by the husband was res gestae of the transaction. They had not yet disposed of what they evidently thought was the dead body of their victim, and yet further acts

of violence were committed after the removal of the body, apparently to make sure their victim was dead.

The judgment is affirmed.