Affirmed and Memorandum Opinion filed May 13, 2008








Affirmed and Memorandum Opinion filed May 13, 2008.

 

 

In The

 

Fourteenth Court of
Appeals

____________

 

NO. 14-06-00609-CR

____________

 

EDUARDO RODRIGUEZ, Appellant

 

V.

 

THE STATE OF TEXAS, Appellee

 



 

On Appeal from the 23rd
District Court

Brazoria County, Texas

Trial Court Cause No. 50489

 



 

M E M O R A N D U M   O P I N I O N

Appellant Eduardo Rodriguez appeals his murder conviction,
claiming (1) legal and factual insufficiency of the evidence supporting the
jury=s rejection of his
self-defense claim, and (2) harmful error in the trial court=s failure to
charge the jury on self-defense for multiple assailants.  We affirm.

I.  Factual and Procedural Background








In June 2005, appellant attended a party with his brother
Juan Rodriguez, Marina Bravo, Sergio Guerrero, and Jose Edgar Romano.  Leodan
Cruz, Wilfredo Cruz, Miguel Castorena, and Reynaldo Ayala were also at the
party.  Both groups left the party in two separate vehicles and drove to the
Cruz residence.

On the way, Castorena told those in his vehicle, Ayala,
Wilfredo Cruz, and Leodan Cruz, that he anticipated an argument with Juan and
appellant involving Castorena=s wife or the truck Castorena bought from
appellant=s father.[1] 
Testimony at trial indicated that Castorena=s group arrived at
the Cruz house first and sought weapons in anticipation of Castorena=s predicted
argument.  Ayala hid a machete and grabbed a kitchen knife.  Wilfredo got brass
knuckles. 

The record is unclear regarding the order of events or how
much time elapsed between events that night.  After appellant=s group arrived,
appellant took Ayala=s sunglasses.  Ayala demanded their return
and withdrew the kitchen knife from his pocket, keeping it at his side. 
Castorena took the knife from Ayala and then Guerrero took the knife from
Castorena.  At some point, Leodan picked up a brick, but he dropped it
immediately when Guerrero, who was also holding a brick, suggested that they
both drop the bricks.  Soon after those incidents, Juan told his group to get
weapons from their vehicle. 

The testimony regarding the ensuing melee was sporadic at
best.  Ayala testified for the State that appellant poked him with a baseball
bat.  Ayala grabbed the machete and swung it at appellant and appellant=s group when they
surrounded him.  Appellant hit Ayala in the back of the head with the baseball
bat.  Ayala testified that after that encounter, he saw appellant run with the
baseball bat in the direction where Leodan was later found unconscious.  Ayala
testified that he did not see Leodan with any weapons that night, but he did
not see Leodan at all once they arrived at the Cruz residence.  Ayala and
Wilfredo later found Leodan unconscious; they did not find weapons around
Leodan=s body. 








Castorena testified for the State, but was deemed a hostile
witness.  Castorena testified that appellant was the only person that night who
had a baseball bat.  Castorena testified that appellant, with a baseball bat,
and Bravo, with a golf club, hit him from behind on the back of his head, but
he was not sure who hit him.  At trial, Castorena could not recall seeing
appellant and Bravo swinging something and hitting Leodan, who was lying on the
ground with Romano bent over him; however, he recounted this information to
police in a police statement several days following the incident. 

Wilfredo Cruz, Leodan=s brother and
appellant=s only witness, testified that he saw Leodan with
Romano and Bravo.  Bravo was hitting her palm with the golf club.  He testified
that at one point, he saw appellant and an injured Castorena standing by
Castorena=s truck, where Leodan was eventually found.  Wilfredo
testified that later he saw appellant, Bravo, Romano, and Juan standing in the
place where Leodan was later found.  He did not see Leodan get hit and
discovered Leodan only after the participants departed in the vehicles.  Other
than seeing the brick briefly in Leodan=s hand earlier
that night, Wilfredo did not see Leodan with any weapons.

The only other account of the fight was appellant=s written
statement given to an investigator while appellant was in a juvenile detention
center.  Appellant=s statement indicated that someone Arushed@ at appellant, and
Juan hit the person with his fists.  Juan told his group to Aget the bats,@ and Bravo handed
appellant a screwdriver.  Appellant explained how the events unfolded in his
statement:

[Leodan] ran at us with a knife, and I hit him in
the head with the handle of the screw driver.  [Leodan] was still standing and
[Romano] hit [Leodan] in the back of the head with some brass knuckles.  I saw
a bat by the stack of bricks, and I picked it up.  I then hit [Leodan] with the
bat in the top of the head and he fell to the ground.  When [Leodan] fell to
the ground, [Romano] started hitting him with the brass knuckles in the head
and I was kicking [Leodan] in the ribs.  Nina then walked over to us and told
us to stop hitting him.  Juan came over and tried to roll him over.  








After the fight was over, the groups dispersed in two
vehicles.  Police located both vehicles and found Romano, Juan, and appellant
hiding in appellant=s aunt=s house.  Police
found Leodan unconscious in the yard.  After paramedics arrived, Leodan was
taken by Life Flight to a hospital.  He died eight days later from what was
described in the autopsy report as blunt head trauma.  Police recovered a
broken baseball bat, a machete, and a kitchen knife from the scene.  No weapons
were found around Leodan=s body.  Lab tests revealed Leodan=s DNA on the end
of the baseball bat.

Appellant was charged by indictment with murder, to which
he pleaded Anot guilty.@  A jury found
appellant guilty and assessed punishment at twenty years= confinement.

II.  Issues and Analysis

A.      Is the evidence legally and
factually sufficient to support the jury=s finding that appellant did not
act in self-defense?[2]

In two issues, appellant contends that the State failed to
meet its burden of persuasion in disproving his evidence of self-defense and
that the evidence did not support the jury=s finding that
appellant did not act in self-defense.








In evaluating a legal-sufficiency challenge, we view the
evidence in the light most favorable to the verdict.  Wesbrook v. State,
29 S.W.3d 103, 111 (Tex. Crim. App. 2000).  The issue on appeal is not whether
we, as a court, believe the State=s evidence or
believe appellant=s evidence outweighs the State=s evidence.  Wicker
v. State, 667 S.W.2d 137, 143 (Tex. Crim. App. 1984).  The verdict may not
be overturned unless it is irrational or unsupported by proof beyond a
reasonable doubt.  Matson v. State, 819 S.W.2d 839, 846 (Tex. Crim. App.
1991).  The jury, as the trier of fact, Ais the sole judge
of the credibility of the witnesses and of the strength of the evidence.@  Fuentes v.
State, 991 S.W.2d 267, 271 (Tex. Crim. App. 1999).  The jury may choose to
believe or disbelieve any portion of the witnesses= testimony.  Sharp
v. State, 707 S.W.2d 611, 614 (Tex. Crim. App. 1986).  When faced with
conflicting evidence, we presume the trier of fact resolved conflicts in favor
of the prevailing party.  Turro v. State, 867 S.W.2d 43, 47 (Tex. Crim.
App. 1993).  Therefore, if any rational trier of fact could have found the
essential elements of murder beyond a reasonable doubt and also could have
found against appellant on the self‑defense claim beyond a reasonable
doubt, we must affirm.  See Saxton v. State, 804 S.W.2d 910, 914 (Tex.
Crim. App. 1991).

In contrast, when evaluating a challenge to the factual
sufficiency of the evidence, we view all the evidence in a neutral light and
inquire whether we are able to say, with some objective basis in the record,
that a conviction is Aclearly wrong@ or Amanifestly unjust@ because the great
weight and preponderance of the evidence contradicts the jury=s verdict. 
Watson v. State, 204 S.W.3d 404, 414B17 (Tex. Crim.
App. 2006).  It is not enough that this court harbor a subjective level of
reasonable doubt to overturn a conviction that is founded on legally sufficient
evidence, and this court cannot declare that a conflict in the evidence
justifies a new trial simply because it disagrees with the jury=s resolution of
that conflict.  Id. at 417.  If this court determines that the evidence
is factually insufficient, it must explain in exactly what way it perceives the
conflicting evidence greatly to preponderate against conviction.  Id. at
414B17.  Our
evaluation should not intrude upon the fact finder=s role as the sole
judge of the weight and credibility given to any witness=s testimony.  See
Fuentes, 991 S.W.2d at 271.  In conducting a factual-sufficiency
review, we discuss the evidence appellant claims is most important in allegedly
undermining the jury=s verdict.  Sims v. State, 99
S.W.3d 600, 603 (Tex. Crim. App. 2003).








A person is justified in using force against another when
and to the degree he reasonably believes the force is immediately necessary to
protect himself against the other=s use or attempted
use of unlawful force.  Tex. Penal Code
Ann. ' 9.31(a) (Vernon 2003).  In a self-defense claim, the
defendant has the burden of production and must bring forth some evidence to
support the particular defense.  Zuliani v. State, 97 S.W.3d 589, 594
(Tex. Crim. App. 2003).  However, once the defense is raised, the State bears
the burden of persuasion to disprove the defense.  Id.  The burden of
persuasion is not one that requires the production of evidence; rather, it
requires only that the State prove its case beyond a reasonable doubt.  Id. 
The issue of self-defense is a fact issue to be determined by the jury, which
is free to accept or reject any defensive evidence on the issue.  Saxton,
804 S.W.2d at 914.  When a jury finds the defendant guilty, there is an
implicit finding against the defensive theory.  Zuliani, 97 S.W.3d at
594.  

Appellant claims the evidence supports that he acted in
self-defense.  Appellant cites evidence that Leodan=s group armed
themselves first before appellant=s group arrived
and that  Leodan=s group acted as the initial aggressors
when Leodan grabbed a brick and Ayala pulled the kitchen knife from his
pocket.  Moreover, appellant=s written statement indicates that when
appellant struck Leodan with the handle of a screwdriver, Leodan had rushed at
appellant with a knife, and when Leodan did not fall, appellant hit him with a
baseball bat.








In reviewing the evidence in the light favorable to the
verdict, we cannot conclude the jury was irrational in rejecting appellant=s self-defense
claim and convicting appellant of murder.  See Saxton, 804 S.W.2d at
914.  Although appellant presented evidence to show he acted in self-defense,
other testimony and evidence contradicted appellant=s account. 
Testimony reflects that Leodan was not armed when the fight broke out after
Juan told his group to gather weapons.  Neither the police, Ayala, or Wilfredo
found weapons near Leodan=s body.  The only knife recovered was one
found in a ditch along the road that appellant=s group took when
leaving.  Because the jury may choose to believe or disbelieve witnesses= testimony, in the
face of conflicting evidence, we presume the jury resolved conflicts in favor
of the prevailing party.  See Turro, 867 S.W.2d at 47; Sharp, 707
S.W.2d at 614.  The jury rationally could have believed the testimony of Ayala,
Castorena, and Wilfredo, all of whom agreed that Leodan was unarmed that night,
with the exception of the brick, which Leodan dropped almost immediately.  See
Saxton, 804 S.W.2d at 914; Denman v. State, 193 S.W.3d 129, 133
(Tex. App.CHouston [1st Dist.] 2006, pet. ref=d).  We hold that
the evidence is legally sufficient to prove murder because a rational jury
could have found against appellant on the self-defense issue beyond a
reasonable doubt.  See Saxton, 804 S.W.2d at 914; Denman,
193 S.W.3d at133 (providing that appellant=s testimony of
self-defense is not enough to render evidence insufficient).  We overrule
appellant=s first issue.

After reviewing the evidence in a neutral light, we cannot
conclude the guilty verdict is against the great weight and preponderance of
the evidence so as to be clearly wrong or manifestly unjust.  See Zuliani,
97 S.W.3d at 595; Clewis v. State, 922 S.W.2d 126, 129 (Tex. Crim. App.
1996).  Although Wilfredo testified Leodan grabbed a brick and appellant=s written
statement supports this contention, it is uncontroverted that Leodan dropped
the brick before the melee began.  Ayala testified that he grabbed the machete
only after he was surrounded by appellant and appellant=s group. 
Furthermore, Ayala testified that he held the knife at his side, and Castorena
quickly took it from him.  Testimony showed Leodan to be unarmed when appellant=s group got
weapons.  No weapons were ever recovered from Leodan or from around his body. 
The State produced evidence that appellant was the only one with a baseball
bat, and the baseball bat recovered by police had Leodan=s DNA on it.  Even
if appellant=s written statement were taken as true that Leodan
rushed at appellant with a knife, the jury is the sole judge of the weight and
credibility of the evidence.  See Johnson v. State, 23 S.W.3d 1, 7 (Tex.
Crim. App. 2000).  In assessing guilt, the jury impliedly found against
appellant=s self-defense theory.  See Zuliani, 97 S.W.3d
at 594; Tucker v. State, 15 S.W.3d 229, 235B36 (Tex. App.CHouston [14th
Dist.] 2000, pet. ref=d).  Thus, we cannot conclude that the
State=s proof of
appellant=s guilt is against the great weight and preponderance
of the evidence; neither can we conclude that the State=s proof is too
weak to support the finding.  See Zuliani, 97 S.W.3d at 595.  Viewing
the evidence in a neutral light, we hold that the evidence is factually
sufficient.  Accordingly, we overrule appellant=s  second issue.








B.      Did the trial court err in
failing to charge the jury on self-defense as it applies to multiple
assailants?

In his third issue, appellant claims the trial court
reversibly erred in refusing his request for a jury instruction on self-defense
against multiple assailants.

A defendant is entitled to a charge on the right of
self-defense against multiple assailants if there is evidence, viewed from the
defendant=s perspective, that he reasonably believed A>that he was in
danger of an unlawful attack or a threatened attack at the hands of more than
one assailant.=@  Frank v. State, 688 S.W.2d 863,
868 (Tex. Crim. App. 1985) (quoting Wilson v. State, 140 Tex. Crim. 424,
145 S.W.2d 890, 893 (1940)).  In determining whether evidence has been
presented that raises the issue of a defensive charge, we must consider all of
the evidence presented at trial regardless of whether it is Astrong, weak,
unimpeached, or contradicted.@  Booth v. State, 679 S.W.2d 498,
500 (Tex. Crim. App. 1984); see Frank, 688 S.W.2d at 868.  A jury charge
confined only to the right of self defense against a victim is too restrictive
if evidence indicates that more than one person attacked the defendant.  See
Frank, 688 S.W.2d at 868. 

In support of his contention that he should have received
an instruction on self-defense against multiple assailants, appellant cites
evidence that he was threatened and attacked not only by Leodan with a knife
and brick, but also by Ayala with a knife and a machete.  Appellant also cites
evidence that Wilfredo had brass knuckles and Castorena had a knife.  Presuming
without deciding that the trial court erred in not giving the instruction on
multiple assailants, we conclude that the error was harmless.  See Collier
v. State, No. 14-00-00609-CR, 2002 WL 1824967, at *6 (Tex. App.CHouston [14th
Dist.] Aug. 8, 2002) (not designated for publication), aff=d, No. 1647-02,
2003 WL 22508079 (Tex. Crim. App. Nov. 5, 2003) (not designated for
publication).








Appellant objected to the lack of the multiple-assailants
instruction at trial; therefore, he is entitled to reversal if he can
demonstrate that he suffered some actual, rather than theoretical, harm.  See Dickey v. State, 22 S.W.3d 490,
492 (Tex. Crim. App. 1999).  The presence of any harm, regardless of degree, is
sufficient to require a reversal of the conviction.  Id.; Arline v.
State, 721 S.W.2d 348, 351 (Tex. Crim. App. 1986).  If appellant=s written
statement is to be believed, appellant claimed that he used force against
Leodan, when Leodan attacked him with a knife, which is an act that, by itself,
justified the use of deadly force.  See Collier, 2002 WL 1824967,
at *7; see also Dickey; 22 S.W.3d at 493 (Keller, J.,
concurring).  Presuming without deciding that appellant was justified in his
attack against Leodan, the trial court instructed the jury on appellant=s right of
self-defense against Leodan Ato protect himself against [Leodan=s] use or
attempted use of unlawful force.@  However, in
finding appellant guilty, the jury implicitly rejected appellant=s self-defense
theory against Leodan, which necessarily indicates that the jury also would
have rejected a self-defense theory involving multiple assailants.  See
Dickey, 22 S.W.3d at 493; Collier, 2002 WL 1824967, at *7.  Thus,
even if the trial court erred in not submitting a multiple-assailants
instruction, appellant has not demonstrated actual harm from this error.  See
Dickey, 22 S.W.3d at 492 (majority opinion); Collier, 2002 WL
1824967, at *7.  We overrule appellant=s third issue.

Having overruled appellant=s three issues, we
affirm the trial court=s judgment.

 

 

 

                                                              

 

/s/      Kem Thompson Frost

Justice

 

Judgment
rendered and Memorandum Opinion filed May 13, 2008.








Panel
consists of Justices Fowler, Frost, and Seymore.

Do Not
Publish C Tex. R. App. P. 47.2(b).

 









[1]  Castorena is also the brother-in-law of appellant
and Juan Rodriguez.





[2]  Though appellant presents legal insufficiency and
factual insufficiency as two separate issues, we review these issues together.