NO. 07-10-0331-CR

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL A

MAY 18, 2012

_____

BRENTON W. SHADDEN, APPELLANT

V.

THE STATE OF TEXAS, APPELLEE

_____

FROM THE 140TH DISTRICT COURT OF LUBBOCK COUNTY;

NO. 2008-420,688; HONORABLE JIM B. DARNELL, JUDGE
_____

Before CAMPBELL and HANCOCK and PIRTLE, JJ.

**MEMORANDUM OPINION**

Following a jury trial, Appellant, Brenton W. Shadden, was convicted of the second degree felony offense of aggravated assault with a deadly weapon,[1] by using a knife,[2] and the first degree felony offense of aggravated assault with a deadly weapon

---

[1]*See* Tex. Penal Code Ann. § 22.02(a)(2) (West 2011).

[2]Although Count I of the indictment alleged Appellant committed an aggravated assault with a deadly weapon against a public servant, the jury convicted Appellant of the lesser-included offense--aggravated assault with a deadly weapon.

against a public servant,[3] using a wooden pole.[4] The trial court assessed two ten year sentences of confinement and ordered that the sentences be served concurrently. In a single issue, Appellant asserts the trial court erred by failing to charge the jury with an instruction of self-defense against multiple assailants. We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

Lubbock Sheriff's Department Deputies Brian Thieme and Jordan Gladman were dispatched to Appellant's residence on a domestic dispute. Upon arrival, they learned that Appellant had locked himself in a bedroom of the residence with a six pack of beer and four butcher knives, after having been drinking excessively and expressing his desire to commit suicide. After being refused entry into the bedroom for purposes of a welfare check, the deputies warned Appellant that they were going to kick the door down. Deputy Gladman drew his service weapon, Deputy Thieme drew a TASER gun, and the two deputies forced their entry into the bedroom. Upon entry, Appellant had a knife in his hand. Deputy Thieme's attempt to deploy his TASER gun failed and a scuffle ensued. After being struck by Appellant with a wooden stick, Deputy Gladman was able to use his TASER on Appellant and he was subdued. By Appellant's account, he was unaware that the two men entering the bedroom were law enforcement officers. He contends the knife was knocked from his hand by Deputy Thieme's attempted use of his TASER gun and his use of the wooden stick was solely for the purpose of defending himself against his perceived attack by Deputy Gladman.

---

[3]*See* Tex. Penal Code Ann. §§ 22.02(a)(2) and 22.02(b)(2)(B) (West 2011).

[4]Count II of the indictment alleged Appellant committed an aggravated assault with a deadly weapon, to-wit: a wooden pole, against a public servant.

2

At the trial court's charge conference, Appellant first objected to the trial court's failure to issue a jury charge describing the circumstances under which a person is justified in using force to resist an arrest. *See* Tex. Penal Code Ann. § 9.31(c) (West 2011).[5] *See also Kemph v. State,* 12 S.W.3d 530, 531-32 (Tex.App.—San Antonio 1999, pet. ref'd). After acknowledging that defense was "not exactly applicable to aggravated assault on a peace officer," Appellant's objection morphed into an objection pertaining to the absence of a jury instruction on a person's right to use self-defense against multiple assailants. The trial court denied Appellant's request. On appeal, while Appellant couches his argument as a question of whether the trial court erred by failing to include an instruction on the right to use force in self-defense against multiple persons, he argues that he was justified in using force because the deputies used excessive force.

## ANALYSIS

In analyzing a jury-charge issue, we first determine if error occurred; and, only if we so find, do we proceed with a harm analysis. *Ngo* v. *State*, 175 S.W.3d 738, 743 (Tex.Crim.App. 2005). Here, we find no charge error.

A defendant is entitled to a self-defense charge on the right to use force against multiple assailants if "there is evidence, viewed from the accused's standpoint, that he was in danger of an unlawful attack or threatened attack at the hands of more than one assailant." *Frank v. State*, 688 S.W.2d 863, 868 (Tex.Crim.App. 1985) (quoting *Wilson v. State*, 140 Tex. Crim. 424, 145 S.W.2d 890, 893 (1940)). Therefore, it is axiomatic

---

[5]We will refer to provisions of the Texas Penal Code as "section ____" or "§ ____" throughout the remainder of this opinion.

that in order to be justified in using force against any of the multiple assailants, the accused must be justified in using force against at least one of his perceived assailants.

Because the "multiple assailants" in this case were all sheriff's deputies attempting to subdue and detain Appellant for purposes of a welfare check, to justify his use of force he must have been justified in using force against at least one of those perceived assailants. The right to use force against a person who is attempting to effect an arrest or search is, however, limited. *See* § 9.31(c); *Porteous v. State*, 259 S.W.3d 741, 747 (Tex.App.—Houston [1st Dist.] 2007, no pet.).

In pertinent part, section 9.31(c) limits the right to use of force against a peace officer as follows:

(c) The use of force to resist arrest or search is justified:

(1) if, before the actor offers any resistance, the peace officer (or person acting at his direction) uses or attempts to use greater force than necessary to make the arrest or search; and

(2) when and to the degree the actor reasonably believes the force is immediately necessary to protect himself against the peace officer's (or other person's) use or attempted use of greater force than necessary.

Here, we find there was no evidence offered by either side that Appellant perceived that either deputy used or attempted to use greater force than necessary to effect Appellant's arrest. Prior to attempting to enter Appellant's bedroom, Deputies Thieme and Gladman had been told that Appellant had been drinking all day with nothing to eat and was threatening to kill himself. Appellant's wife told the deputies that he had thrown a glass of water at her and she had hidden his gun from him. The

4

deputies were also told Appellant had taken four butcher knives and a six-pack of beer into his bedroom before locking the door.

When Appellant refused to open the bedroom door and resisted any entry by leaning against the door, both deputies forced the bedroom door open and Deputy Gladman entered with his gun drawn because he had information Appellant was armed and had committed a prior assault. No force was exerted against Appellant by either deputy until after Appellant brandished a kitchen knife. Although the deputies used some force, they did not use excessive force. *Goddard v. State,* 154 S.W.3d 231, 231 (Tex.App.—Amarillo 2005, no pet.) (mere act of grabbing a suspect's arm or arms not excessive force). *See Gonzales v. Kelley,* No. 01-10-00109-CV, 2010 Tex. App. LEXIS 5113 at *18-19 (Tex.App.—Houston [1st Dist.] 2010, no pet.) (reasonable for officer to believe use of TASER was justified to secure suspect in response to specific aggressive acts); *Bennett v. State,* No. 06-07-00001-CR, 2007 Tex. App. LEXIS 5373 at *5-6 (Tex.App.—Texarkana 2007, pet. dism'd) (not designated for publication) (officer approaching suspect with gun drawn does not constitute excessive force).

Furthermore, as to Count 1 of the indictment (threatening Deputy Gladman with imminent bodily injury with a knife), a self-defense instruction was unavailable because that defense was inconsistent with Appellant's denial of the charged conduct; *Ford v. State*, 112 S.W.3d 788, 794 (Tex.App.—Houston [14th Dist.] 2003, no pet.) (citing *Sanders v. State*, 707 S.W.2d 78, 81 (Tex.Crim.App. 1986)), and a defendant is not entitled to an instruction on self-defense if "he claims that he did not perform the assaultive acts alleged, or that he did not have the requisite culpable mental state, or both." *VanBrackle v. State*, 179 S.W.3d 708, 715 (Tex.App.—Austin 2005, no pet.)

5

(citing *Ex parte Nailor*, 149 S.W.3d 125, 134 (Tex.Crim.App. 2004)). Here, Appellant denied threatening Deputy Gladman with a knife, in self-defense or otherwise, but instead insisted that he dropped the kitchen knife after being tied up in the deputy's TASER lines.[6] As a result, because he specifically denies the conduct in question, Appellant was not entitled to a self-defense instruction regarding Count 1 of the indictment. *See Kimbrough v. State,* 959 S.W.2d 634, 640 (Tex.App.—Houston [1st Dist.] 1995, pet. ref'd) (no instruction on self-defense proper where appellant did not admit to shooting gun).

As to Count II of the indictment (causing bodily injury to Deputy Gladman by striking him with a wooden pole), while Appellant does concede that he used a stick to defend himself against a perceived attack, he contends that the foregoing analysis is inapposite because, at the time he used that force to defend himself, he was unaware that any of the men who entered his bedroom were peace officers. However, the record reflects that, not only did both deputies identify themselves as peace officers before entering the bedroom, both were wearing distinct law enforcement uniforms at the time of the incident. A person charged with assaulting a public servant is presumed to have known the person assaulted was a public servant if the person was wearing a distinctive uniform or badge indicating the person's employment as a public servant. *See* § 22.02(c). Furthermore, Appellant never requested a mistake of fact instruction. *See* § 8.02.

---

[6]On cross-examination, he testified that "no sir, I did not throw the knife at Deputy Gladman."

Accordingly, we find the trial court committed no error in denying the instruction pertaining to the right to use force in self-defense against multiple assailants. Appellant's single issue is overruled.

## Conclusion

The trial court's judgment is affirmed.

Patrick A. Pirtle
Justice

Do not publish.