**Jerry Lavon BOYETT, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 65967.**

Court of Criminal Appeals of Texas, En Banc.

June 26, 1985.

Michael A. McDougal, Conroe, for appellant.

Carroll E. Wilborn, Jr., Dist. Atty. and Jerry E. Andress, Asst. Dist. Atty., Liberty, Robert Huttash, State's Atty., Austin, for the State.

## OPINION

W.C. DAVIS, Judge.

Appellant was indicted for murder. A jury found him guilty of the lesser included offense of voluntary manslaughter. The jury assessed punishment at twelve years' confinement. Appellant asserts two grounds of error, contending that the court's charge to the jury is fundamentally defective, and that the court erroneously overruled his motion for new trial.

Appellant argues that the charge is fundamentally defective because it does not include instructions stated in the converse which would allow the jury to find appellant not guilty after considering each of the charged offenses.

The standard by which we review appellant's claim of fundamental error is whether "the error is so egregious and created such harm that appellant 'has not had a fair and impartial trial.'" *Almanza*

*v. State,* 686 S.W.2d 157, 171 (Tex.Cr.App. 1984). The degree of harm must be judged in light of the entire jury charge, the evidence, including the contested issues and weight of probative evidence, the argument of counsel and any other relevant information shown in the record. *Almanza,* supra.

On May 20, 1978, appellant stopped by the home of Lavonne and Zelman Hart. Appellant was Lavonne's stepfather. Lavonne testified that her husband, Zelman, was not at home at the time, and that her two children and three of her foster children were present. Appellant and his wife, Lavonne's mother, asked if Lavonne's son, Wade, could spend the night with them and their two children. Lavonne agreed.

Lavonne testified that she was not feeling well that day and appellant started picking on her. She ran into the backyard and appellant followed her. She tried to jump over a fence, but he pulled her down. She managed to get up, jump over the fence, and go into the house in an attempt to get away from appellant. Appellant attempted to jump over the fence and fell down. Two of Lavonne's foster sons helped him up and told him he ought to leave, which he eventually did. Several of the State's witnesses testified that appellant had been drinking or was drunk when he stopped by Lavonne's house on May 20.

Lavonne testified that her husband arrived home early the next morning from a trip out of state. She did not tell him about the incident with appellant. In the evening of that day, May 21, Zelman called appellant and told him he was sending two of the foster boys over to pick up Wade. Appellant testified that during this phone conversation Zelman threatened to kill him if he ever touched his wife again. The two boys drove to appellant's house and brought Wade home. Shortly after they returned appellant drove over to the Hart's house with his two children. He sent them to tell Lavonne and Zelman that he wanted to talk to them. Zelman went out to talk to appellant while Lavonne and two of the

boys watched them through the kitchen window.

Zelman walked over to the open passenger door of appellant's truck, leaned on it and talked to appellant, who was sitting on the driver's side. The State's witnesses testified that appellant slid over toward the passenger side of the truck, raised his right arm, which had been draped over the back of the seat, and fired one shot at Zelman. Zelman fell to the ground and died soon afterward. Appellant's children got into the truck and appellant left. He later turned himself in to the police.

Appellant's version is somewhat different. He testified that Zelman punched him in the face and grabbed the gun off of the dash of the truck. Appellant said that he grabbed the gun to keep Zelman from shooting him and that he never even had his hand on the trigger. He said the gun went off as he struggled with Zelman.

Larry Allen, a police officer for the city of Cleveland, testified that on May 21, 1978, appellant came into the police department and said, "I am here to turn myself in. I just killed Zelman Hart. He had it coming." Allen said appellant was intoxicated at the time. The next day appellant gave a written statement to the police in which he said he and Zelman had a fight and the gun went off.

Appellant was recalled to the witness stand and admitted that he had lied when he testified previously under oath that he had not had a drink since December of 1979.

We must first determine whether error exists in the charge. If error is presented it must then be evaluated in light of the standard set forth in *Almanza,* supra. Appellant requested instructions on the lesser included offenses of voluntary manslaughter, involuntary manslaughter and criminally negligent homicide. The record is unclear whether appellant submitted written requested charges which were included or whether the court designed the instructions. Although we do not decide the case on the issue, if the charges were appellant's own requested written charges, no

error would be presented. *Gutierrez v. State,* 659 S.W.2d 423 (Tex.Cr.App.1983).

The court's charge to the jury on guilt/innocence includes instructions on murder, voluntary manslaughter, involuntary manslaughter and criminally negligent homicide. It also included an instruction on the defense of accident, stating that the jury should acquit if they found the death was the result of an accident while appellant and Zelman were struggling for possession of the gun. After applying the law to the facts for murder, voluntary manslaughter, and involuntary manslaughter, the charge stated, "Unless you so find, or if you have a reasonable doubt thereof, you should consider whether or not the defendant is guilty of the lesser included offense of [offense named]."

Appellant contends this "amounts to an instruction to convict because it does not instruct the jury to acquit Appellant of a greater offense before considering his guilt of a lesser offense nor does it instruct the Jury to acquit if it has a reasonable doubt as to whether Appellant is guilty of any offense therein defined." Appellant contends that the charge should have instructed the jury that:

> ... if you do not so believe, [the defendant is guilty of the greater offense] or if you have a reasonable doubt thereof, you will acquit the defendant and say by your verdict 'not guilty' but if you do not so believe, or if you have a reasonable doubt thereof, you will acquit the defendant of [the greater offense] and proceed to consider whether the defendant is guilty of the [lesser offense].

■ We agree with appellant that the charge given in the instant case should have more explicitly instructed the jurors that if they did not believe, or if they had reasonable doubt of appellant's guilt of the greater offense, they should acquit appellant and proceed to consider whether appellant was guilty of the lesser included offense. See 8 S. Willson, Criminal Forms Ann., Chapter 93 (Texas Practice 1977). If we were not reviewing this charge under a

fundamental error standard, such error might well be reversible. However, the instruction given, although not a model charge, essentially instructed the jurors to acquit, without specifically using the word "acquit", by stating that if the jurors had a reasonable doubt as to the guilt of appellant to the greater offense, they should next consider the lesser included offense. This instruction properly informed the jurors to consider appellant's requested instructions on lesser included offenses. The jury apparently understood the instructions correctly since they found appellant guilty of the lesser included offense of voluntary manslaughter, thus acquitting him of murder. The charge read as a whole adequately instructed the jurors about acquitting appellant and about considering the lesser included offenses requested by appellant.

■ The second part of appellant's contention is that the charge does not instruct the jury to acquit if it has a reasonable doubt as to whether appellant is guilty of any offense. The last page of the charge instructs the jurors, "In case you have a reasonable doubt as to defendant's guilt after considering all the evidence before you and these instructions, you will acquit him." The better practice is to instruct the jury that if it has a reasonable doubt as to whether a defendant is guilty of any offense defined in the charge, it will find the defendant not guilty and the better location for such an instruction is after the last lesser included offense in the charge. However, we hold that the instruction given is, in essence, the same as that appellant now contends should have been given and the charge when read as a whole adequately instructs the jury on this issue.

Although the charge given is certainly not a model charge, in light of the evidence which clearly supports a conviction even for murder, in light of the entire charge read as a whole, and in light of the verdict finding appellant guilty of a lesser included offense, we hold that the charge did not deprive appellant of a fair and impartial trial. The charge, while not perfect, adequately instructs the jury.

In his second ground of error appellant contends that the trial court erroneously overruled his motion for new trial which was based on newly discovered evidence. Art. 40.03(6), V.A.C.C.P. At the hearing on appellant's motion for new trial Lillian Warner testified that Larry Allen, the investigating officer, told her he had found a gun on the person of the deceased. Allen testified at the hearing and denied ever making such a statement and said that the deceased had already been taken to the hospital when he arrived at the scene of the shooting. Allen said the only gun he recovered was appellant's gun from appellant's house.

Appellant's trial counsel, L.J. Krueger, testified that he had spoken with Warner and subpoenaed her for trial to testify about Lavonne Hart's relationship with one of her husbands. She did not testify because the court ruled the line of questioning inadmissible. Krueger said that he asked Warner if she had been present at the shooting and if she knew anything about the case. She told him no. Warner said she had talked to Krueger, but had never discussed anything about the evidence or her testimony.

■ Appellant argues that Warner's testimony meets the four part test required for the granting of a new trial based upon newly discovered evidence. The overruling of a motion for new trial based upon newly discovered evidence will not constitute an abuse of discretion unless the record shows (1) the evidence was unknown to the movant before trial; (2) that the defendant's failure to discover it was not due to want of diligence on his part; (3) that its materiality was such as would probably bring about a different result on another trial; and (4) that it was competent, not merely cumulative, corroborative, collateral or impeaching. *Van Byrd v. State*, 605 S.W.2d 265 (Tex.Cr.App.1980); *Hernandez v. State*, 507 S.W.2d 209 (Tex.Cr.App.1974). To be material the new evidence must be shown to be probably true and of such weight as to probably produce a different result at another trial. *Van Byrd*, supra;

*Eddlemon v. State*, 591 S.W.2d 847 (Tex. Cr.App.1980). The trial judge determines whether the new evidence is probably true.

█ In applying the test to the instant case we find that while the evidence appears to have been unknown to appellant before trial, and failure to discover it may not necessarily be due to a lack of diligence, appellant has not shown that the testimony is probably true and of such weight as to probably produce a different result. In the instant case Warner's testimony was hearsay and served only to impeach Allen's testimony. Allen denied making such a statement and Warner was shown to be somewhat hard of hearing, although she stated that she heard Allen tell her about finding the gun. The trial judge saw the witnesses and determined their credibility. In addition, appellant's defense was accident and his version of the offense does not involve a gun other than that in his truck. Therefore, even if Warner's testimony is true, which it has not been shown to be, it would probably not bring about a different result. The testimony does not meet the materiality prong of the test. Also, as testimony that "merely" impeaches, the testimony does not meet the fourth prong of the test. The trial court did not abuse its discretion in overruling appellant's motion for new trial.

We address one other error, though not raised by appellant, that requires review in the instant case. *Carter v. State*, 656 S.W.2d 468 (Tex.Cr.App.1983). The amended judgment contains a recitation that "the Court makes an affirmative finding that the Defendant used a deadly weapon, . . ." in the commission of the offense. The indictment charges that appellant caused the death of Zelman Hart, "by shooting him with a gun." Appellant was convicted of voluntary manslaughter under a charge which stated that if the jury believed appellant committed murder "as alleged in the indictment, but that in so doing he caused the death under the immediate influence of a sudden passion arising from an adequate cause," they should convict him of voluntary manslaughter.

█ We note first that since appellant was tried by a jury the court had no authority to make an affirmative finding that appellant used a deadly weapon. Art. 42.12, Sec. 3f(a)(2), V.A.C.C.P.; *Ex Parte Thomas*, 638 S.W.2d 905 (Tex.Cr.App.1982). Further, we have held that where the jury is the trier of fact, the indictment specifically alleges "deadly weapon" or names a weapon that is a deadly weapon per se, and the jury's verdict finds the defendant guilty "as charged in the indictment", the jury has made an affirmative finding as to the use of a deadly weapon. *Polk v. State*, 391 S.W.2d 693 (1985). A "gun" is not a deadly weapon per se. *Chavez v. State*, 657 S.W.2d 146 (Tex.Cr.App.1983). Therefore, the indictment in this case does not allege a deadly weapon so as to permit a verdict of "guilty as alleged in the indictment" to be considered an affirmative finding. No special issue was submitted to the jury on the issue. The affirmative finding was therefore improperly entered on the amended judgment. We order the affirmative finding stricken from the amended judgment and reform that judgment by deleting the improper finding. Art. 44.24(b), V.A.C.C.P.

The amended judgment of the trial court is reformed and affirmed.

TEAGUE, Judge, concurring.

Appellant asserts in one ground of error that "the charge [to the jury was] fundamentally defective because it does not include instructions stated in the converse which would allow the jury to find appellant not guilty after considering each of the charged offenses." The majority correctly concludes that the charge was not fundamentally defective. I only concur because there was no error in the charge, much less fundamental error. Thus, how the majority can invoke and apply *Almanza v. State*, 686 S.W.2d 157, 171 (Tex.Cr.App.1984), escapes me.

Based upon this Court's past decisions, it would not have been error to overrule the requested charge that appellant now sub-

mits on direct appeal. See, for example, *Wilson v. State*, 140 Tex.Cr.R. 424, 145 S.W.2d 890, 892 (1940).

In this instance, after each named offense, the jury was instructed as follows: "Unless you so find, or if you have a reasonable doubt thereof, you should consider whether or not the defendant is guilty of the lesser included offense of [offense named]." In descending order, this was a direct instruction to the jury that if they had a reasonable doubt as to whether the appellant was guilty of the named offense, it should acquit him of that offense and next consider whether he was guilty of the next lesser included offense.

In *Wilson v. State*, supra, this Court held: "The court was not required to wind up every paragraph of the charge with the instruction that unless they so found or if they had a reasonable doubt thereof to acquit him."

In this instance, the charge to the jury sufficiently instructed the jury upon the law of reasonable doubt, and it is presumed that the jury followed the court's instructions to the letter—indeed, they must have because they found appellant guilty of the lesser offense of voluntary manslaughter, rather than the greater offense of murder. E.g., *Cobarrubio v. State*, 675 S.W.2d 749, 752 (Tex.Cr.App.1983).

I concur.