**Jose Luis GONZALEZ, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 3–92–424–CR.**

Court of Appeals of Texas,
Austin.

April 28, 1993.

---

L. Nora Soliz, Icenhauer–Ramirez & Hubner, P.C., Austin, for appellant.

Ronald Earle, Dist. Atty., William G. Reid, Asst. Dist. Atty., Austin, for appellee.

Before CARROLL, C.J., and ABOUSSIE and JONES, JJ.

PER CURIAM.

At a trial on a two-count indictment, the jury found appellant guilty of recklessly causing serious bodily injury, serious physical impairment, or disfigurement or deformity to a child (count one). Tex.Penal Code Ann. § 22.04(a)(1)–(3) (West Supp. 1993). The jury also found appellant guilty of intentionally or knowingly causing bodily injury to a child (count two). *Id.* § 22.-04(a)(4). The district court assessed punishment for each count at imprisonment for ten years.

In his first point of error, appellant contends that the evidence does not support his conviction under count one of the indictment because the State failed to prove that the injury suffered by the child was of the sort alleged in the indictment. "Serious bodily injury" means bodily injury that creates a substantial risk of death or that causes death, serious permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ. Tex.Penal Code Ann. § 1.07(34) (West 1974). The phrases "serious physical impairment" and "disfigurement or deformity" are not defined by statute.

The evidence shows that appellant twisted the leg of his two-month-old son, causing a spiral fracture of the right femur. The child did not die and there is no suggestion that his injury was life-threatening. The disputed issue on appeal is whether there is evidence from which the jury could rationally conclude that the injury disfigured or deformed the child's leg, or resulted in a serious or protracted loss or impairment of its function. *See Jackson v. Virginia,* 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *Griffin v. State,* 614 S.W.2d 155 (Tex.Crim.App.1981).[1] In resolving this dispute, this Court looks to the disfiguring and impairing quality of the injury as it was inflicted, without regard to

---

1. In applying the law to the facts in its charge to the jury, the district court authorized appellant's conviction on a theory not alleged in the indictment: that he recklessly caused a serious mental deficiency. Appellant does not complain of this and the State does not contend that appellant's conviction is supportable on this theory, for which there is no evidence in the record.

the ameliorating or exacerbating effects of other actions such as medical treatment. *Brown v. State*, 605 S.W.2d 572, 575 (Tex. Crim.App.1980); *but see Moore v. State*, 739 S.W.2d 347, 354–55 (Tex.Crim.App. 1987) (plurality opinion) (finding of serious bodily injury cannot be based solely on answers to hypothetical questions that assume facts not in evidence).

The relevant testimony was that of the orthopedic surgeon who treated the child:

Q  .... Could you explain to the jury a little bit more—or describe what type of break that was to the thigh?

A  Yes.  There's what we describe as a spiral type fracture, meaning that there's been a twisting type injury to the bone that caused this type of break.  The bone is completely broken in two and separated.

. . . .

Q  .... Would it cause any injury to the tissue surrounding the bone, that type of break?

A  Yes.  There would be damage to the surrounding muscle.  Potentially, the nerves and blood vessels, but not in this instance.

Q  So you had muscle and tissue tearing, but no nerve damage?

A  Correct.

Q  Does the tearing of the tissue and the muscles from the bone cause any kind of problems with the movement of the leg?

A  In the short term.  Once the healing process begins, typically the motion and strength return.

Q  Are there sometimes problems with growth in such injuries?

A  Yes.  With this type of injury, there are frequently problems with deformity, angulation in the bone as well as leg length and quality would be—when the child is finished growing there are differences in the lengths of the two legs.

Q  At this time, with [the complainant], can you determine whether or not he is going to have any bone growth problem?

A  I cannot.  I'd have to follow him.

Q  Would a certain amount of time have to pass or could you explain to the jury whether you will be able to determine if there's going to be problems?

A  You can have a pretty good idea within a year to two years.  But sometimes you have to follow them all the way until they have finished growing.

Q  Is there—is [the child] at risk that this may possibly happen in the future, he would have growth problems?

A  Yes.

. . . .

Q  Is there a substantial risk in this type of injury that there would be some growth problems?

A  Yes.

Q  When you first saw [the child] do you recall whether he was able to move the injured leg?

A  I do not recall exactly, but I would expect that he was unable to move it.

. . . .

Q  Now with regard to the thigh injury, did you have to do anything in order to set that leg or what sort of treatment did you do on the thigh bone?

A  You simply straighten the leg and apply a cast.

. . . .

Q  And this spike case, would you describe that to the jury?

A  That's a cast which goes down the entire side of one leg and comes up over the chest and goes halfway down the other leg to immobilize the break in the thigh.

Q  Okay.  So with that type of cast on, is the child able to move the leg that was broken—

A  No.

Q  —at all?  And is the child able to roll over and that sort of thing with that type of cast on?

A  No.

. . . .

Q  I'd like to ask you what would have been the result if the child's leg had not been treated the way that you've just described, if it has [sic] just been left.

A  There would have been potential for deformity.

Q  And I believe you stated earlier disfigurement.  Would it also—could it also cause disfigurement of the child?

A  Yes, it would.

Q  Would it be possible if not treated that the leg could have been permanently impaired?

A  It's possible.

Q  How long did that cast stay on this child's leg; do you recall?

A  I don't have my office notes, but I would suspect around six weeks.

Q  .... After the cast was removed, is the leg immediately back to normal where the child can use it just as he had before the cast has been put on?

A  No.  There's a recovery period where the strength has to return as well as the motion in the joints.  The recovery period is very short for a three-month-old, whereas it's longer for an adult.

Q  Can you venture an estimate about how long it would be that the recovery period in this age child would be?

A  Probably a couple of weeks.

....

Q  So did the cast that was applied to [the child] impair his physical movement and kind of slow down his development as far as crawling?

A  That's correct.  For the period of time that he's in the cast would set him back that much in terms of motor development.

Q  So he wouldn't be quite as far along as other children his age after that cast was taken off and recovery?

A  He would be about six weeks behind.

■  We hold that the jury could rationally conclude from the doctor's testimony that appellant caused a serious physical impairment of the child's leg.  To impair, in this context, means to do harm to or to diminish in strength.  *Webster's Third New International Dictionary* (1986).  The doctor testified that the child's femur was broken completely in two and that, as a result, the child could not move the leg.  We believe that this constituted a serious physical impairment, keeping in mind that it is the impairing quality of the injury as it was inflicted that is determinative.  Because the evidence is sufficient to sustain the conviction on this basis, we need not decide if the State proved its alternative allegations.  *Vasquez v. State*, 665 S.W.2d 484, 486 (Tex.Crim.App.1984).  Point of error one is overruled.

■  In point of error two, appellant complains of the district court's failure to give a requested instruction to the jury.  In paragraph V of its charge to the jury, the court applied the law to the facts with respect to the offense alleged in count one of the indictment, the intentional or knowing infliction of serious bodily injury, serious physical impairment, or disfigurement or deformity to a child.  At the conclusion of this paragraph, the court instructed the jury that if it had a reasonable doubt as to appellant's guilt of this offense, it was to acquit him on count one and proceed to consider the lesser included offense of reckless infliction of the alleged injuries to the child.  In paragraph VI, the court applied the law to the facts with respect to this lesser included offense and concluded with the instruction that if the jury had a reasonable doubt as to appellant's guilt of this offense, it was to acquit him thereof and proceed to consider the lesser included offense of criminally negligent infliction of the injuries.  Paragraph VII of the charge applied the law to the facts with respect to this lesser included offense and ended with the instruction to acquit appellant of this offense if the jury had a reasonable doubt as to his guilt.  Paragraphs VII, IX, and X repeated this pattern with respect to count two, beginning with the alleged offense, the intentional or knowing infliction of bodily injury to a child, followed by the lesser included offenses of reckless and criminally negligent infliction of bodily injury.  It was at this point in the charge that appellant asked the court to insert this instruction: "If you have a reasonable doubt as to whether the defendant is guilty of any offense defined hereinabove, then you will find defendant NOT GUILTY."

Appellant relies on the opinion in *Boyett v. State*, 692 S.W.2d 512 (Tex.Crim.App. 1985). In *Boyett*, the court said that in cases in which the jury charge includes lesser included offenses, it is the better practice to instruct the jury that if it has a reasonable doubt whether the defendant is guilty of any offense defined in the charge, it will find the defendant not guilty. 692 S.W.2d at 516. The court also stated that the best location for this instruction is after the last lesser included offense in the charge. *Id.*

*Boyett* was decided before *Geesa v. State*, 820 S.W.2d 154 (Tex.Crim.App.1991). In *Geesa*, the court adopted an instruction on reasonable doubt to be given in every criminal case. The prescribed instruction includes this paragraph: "In the event you have a reasonable doubt as to the defendant's guilt after considering all the evidence before you, and these instructions, you will acquit him and say by your verdict 'Not guilty.'" 820 S.W.2d at 162. This paragraph is substantially identical to that recommended in *Boyett* and requested by appellant. We conclude that *Geesa* modifies *Boyett* to the extent that *Geesa's* mandatory instruction on reasonable doubt differs from the instruction recommended in *Boyett*. We also note that the charge contained this additional instruction: "Now bearing in mind the foregoing instructions and definitions, if you find the State has failed to prove each element of the offense beyond a reasonable doubt or if you have a reasonable doubt thereof, you will acquit the defendant and say by your verdict 'Not Guilty.'" We hold the court's failure to give the requested instruction, if error, caused appellant no harm. *Almanza v.*

*State*, 686 S.W.2d 157, 171 (Tex.Crim.App. 1985) (opinion on motion for rehearing). The second point of error is overruled.

■ After the Court of Criminal Appeals announced its opinion in *Morrison v. State*, 845 S.W.2d 882 (Tex.Crim.App.1992), and before this cause was submitted for disposition, this Court granted appellant leave to file a supplemental brief raising a third point of error. Tex.R.App.P. 74(*o*). By this point, appellant contends that the district court erred by permitting the jurors to question witnesses by submitting written questions to the court. In *Morrison*, the court held that such a practice is error because it encourages jurors to depart from their role as passive listeners and assume an active adversarial or inquisitorial stance. *Id.* at 887.

We agree with the State that this point of error was not preserved for review. The defendant in *Morrison* objected at trial to the submission of questions by the jury. 845 S.W.2d at 883 n. 1. In this cause, on the other hand, appellant voiced no trial objection to the procedure.[2] In order to preserve a complaint for appellate review, a party must present to the trial court a timely request, objection, or motion stating the specific grounds for the ruling desired. Tex.R.App.P. 52(a). The third point of error is overruled.

The judgment of conviction is affirmed.

---

2. The only witness to whom questions were directed by the jury was appellant's wife. Appellant objected to the court reviewing the submitted questions with counsel at the bench without excusing the jury from the courtroom. He also objected to one of the submitted questions.

Both of these objections were overruled. Appellant does not bring forward either of these rulings in this point of error.