Opinion issued February 7, 2008









 






In The

Court of Appeals

For The

First District of Texas






NO. 01-06-00369-CR






WENDELL ROY MITCHEL, Appellant


V.


THE STATE OF TEXAS, Appellee






On Appeal from the 230th District Court

Harris County, Texas

Trial Court Cause No. 1045015






O P I N I O N

 A jury found appellant, Wendell Roy Mitchel, guilty of attempted capital
murder (1) and assessed punishment at confinement for 75 years and a fine of $10,000. 
In two points of error, appellant argues that (1) the trial court erred in finding
appellant's confession voluntary and (2) the trial court's charge improperly instructed
the jury that it must unanimously acquit appellant of attempted capital murder before
it could consider a lesser charge.

 We affirm.

Background

 In the early morning hours of April 22, 2005, appellant shot Houston Police
Department Officer R. Montelongo during a routine traffic stop. After the shooting,
Officer Montelongo was able to return to his patrol car and inform his dispatcher of
his injury. When other officers arrived on the scene, Officer Montelongo passed on
information about appellant, including his driver's license, which Officer Montelongo
had received from appellant before the shooting, and a description of appellant's
vehicle and license plate number.

 A short time after the shooting, Officer R. Feusse saw appellant driving the
same vehicle approximately ten miles from the location of the shooting. Officer
Feusse attempted to pull appellant over, but appellant refused to stop. Officer Feusse
pursued appellant until appellant wrecked his car in a ditch and fled on foot. Officer
Feusse radioed the dispatcher with information of the direction of appellant's flight
and the location of appellant's vehicle. After several hours of searching, a team of
ten to twenty officers found appellant in an abandoned home and arrested him. 

 Appellant claims that he overheard unidentified police officers state that
appellant was lucky that he was found by the officers who arrested him because if
they had found him first, they would have shot him. Appellant was transported to the
police station by Officers Gill and Harris. Appellant alleges that the officers told him
"it was best that [he] cooperate with the officers once [he] got downtown because . . .
there was a possibility that they would threaten [him]." Appellant understood this
comment to mean that he might be harmed once he reached the police station, but he
admitted that Officers Gill and Harris never threatened him.

 At the station, Officers Gill and Harris delivered appellant directly to Sergeant
B. McDaniel, who testified that appellant did not seem fearful of Officers Gill and
Harris and that he offered appellant food, drink, and the use of the restroom before
placing appellant in the interview room. Appellant claims that he was refused the
opportunity to make a phone call to his family lawyer prior to meeting with Sergeant
McDaniel, but Sergeant McDaniel testified that appellant never asked to call his
lawyer.

 Sergeant McDaniel, wearing plainclothes with no visible weapon, interviewed
appellant by himself. McDaniel testified that he advised appellant of his rights and
that appellant appeared to understand his rights and waived them. McDaniel also
testified that he did not make appellant any promises or coerce appellant in any way. 
Appellant alleged that he was "under heavy pressure" to cooperate while he gave his
videotaped statement and believed that some harm might come to him if he did not
do as the officers asked, but he also admitted that Sergeant McDaniel did not threaten
him. Sergeant McDaniel testified that appellant appeared "a bit sullen . . . , a little
sad," but appellant did not appear nervous.

 After approximately 20 to 30 minutes of unrecorded interview, appellant gave
a videotaped statement. Sergeant McDaniel once again advised appellant of his
rights, including his right to an attorney, and appellant waived them. In his statement,
appellant admitted he fired a shot at Officer Montelongo, but only with the intent to
scare him away. Appellant claimed he did not intend to hurt the officer. Appellant
testified that no officer threatened him, promised him anything, or coerced him in any
way prior to the giving of his statement.

 Appellant challenged the voluntariness of his confession, and the trial court
held a suppression hearing. After the foregoing evidence was presented at the
hearing, the trial court ruled that the statement was admissible and entered findings
of facts, including that appellant never asked for an attorney prior to giving his
statement, never requested that the interview be terminated, and knowingly,
intelligently, and voluntarily waived his rights.

 At trial, appellant relied on the argument that he was not guilty of attempted
capital murder because he did not intend to hurt Officer Montelongo. Appellant
argued that he shot Officer Montelongo in order to scare him so that appellant could
drive away. In his closing arguments and his appellate brief, appellant emphasized
that the wound was not fatal and that he never fired a second shot after Officer
Montelongo ran back toward his patrol car. The State argued that appellant shot at
Officer Montelongo with the intent to kill him, and, therefore, he was guilty of
attempted capital murder. The State points to the evidence that appellant aimed his
weapon at the officer's face from a distance of a little more than 12 inches. The bullet
entered his left cheek and exited near his left ear, and the emergency room doctor
testified that the wound would easily have been fatal if the trajectory of the bullet had
varied even slightly.

 The trial court presented its charge to the jury. The charge instructed the jury
on the elements of attempted capital murder, then stated, "Unless you so find from the
evidence beyond a reasonable doubt, or if you have a reasonable doubt thereof, you
will acquit the defendant of attempted capital murder of a peace officer and next
consider whether the defendant is guilty of aggravated assault on a public servant." 
The charge gave an instruction on the elements of aggravated assault on a public
servant, and a similar instruction to the one quoted above followed. The charge gave
an instruction on the elements of deadly conduct which was followed by the final
instruction:

 If you believe from the evidence beyond a reasonable doubt that
the defendant is guilty of either attempted capital murder of a peace
officer or aggravated assault on a public servant on the one hand or
deadly conduct on the other hand, but you have a reasonable doubt as to
which of said offenses he is guilty, then you must resolve that doubt in
the defendant's favor and find him guilty of the lesser offense of deadly
conduct.

 

 If you have reasonable doubt as to whether the defendant is guilty
of any offense defined in this charge you will acquit the defendant and
say by your verdict "Not Guilty."


 Appellant requested and received the instruction on the lesser included offense
of deadly conduct and had no other objections to the jury charge. The jury found
appellant guilty of attempted capital murder and assessed punishment at confinement
for 75 years.

Appellant's Confession

 In his first point of error, appellant contends that the trial court erred in finding
his confession voluntary.

 Standard of Review

 We review a trial court's ruling on a motion to suppress evidence for an abuse
of discretion. State v. Dixon, 206 S.W.3d 587, 590 (Tex. Crim. App. 2006). We
review the record in the light most favorable to the trial court's conclusion. Id. We
will sustain the trial court's ruling if it is reasonably supported by the record and is
correct on any theory of law applicable to the case. Id. (citing Romero v. State, 800
S.W.2d 539, 543 (Tex. Crim. App. 1990)). We give almost total deference to the trial
court's determination of historical facts and review de novo the trial court's
application of the law to those facts. Id. 

 A statement may be deemed involuntary in instances of noncompliance with
Texas Code of Criminal Procedure article 38.22, instances of noncompliance with the
dictates of Miranda v. Arizona, 384 U.S. 436, 86 S. Ct. 1602 (1966), or when there
is a violation of due process or due course of law like coercion or threats. Moore v.
State, 233 S.W.3d 32, 44 (Tex. App.--Houston [1st Dist.] 2007, no pet.) (citing Wolfe
v. State, 917 S.W.2d 270, 282 (Tex. Crim. App. 1996)). The court examining the
admissibility of the confession must determine whether, in the totality of the
circumstances, the defendant was coerced to such a degree that the coercion, rather
than his free will, produced the statement. Id. (citing Alvarado v. State, 912 S.W.2d
199, 211 (Tex. Crim. App. 1995)).

 Once a defendant raises the question of voluntariness, the State has the burden
to controvert the defendant's evidence and must prove the voluntariness of the
confession by a preponderance of the evidence. Alvarado, 912 S.W.2d at 211. If the
defendant's evidence is not controverted by the State, then the confession is
inadmissible as a matter of law. Brownlee v. State, 944 S.W.2d 463, 467 (Tex.
App.--Houston [14th Dist.] 1997, pet. ref'd). However, it is only necessary for the
State to controvert the evidence--it is not necessary for the State to rebut the
evidence. Muniz v. State, 851 S.W.2d 238, 252 (Tex. Crim. App. 1993). The trial
court is free to believe or disbelieve, in whole or in part, any witness's testimony. 
Sells v. State, 121 S.W.3d 748, 767 (Tex. Crim. App. 2003). 

 Analysis

 Here, appellant raised the issue of the voluntariness of his confession, claiming
that he had felt pressured into cooperating and giving the videotaped statement. He
also claimed that he was denied the opportunity to make a phone call to his family
attorney. At the suppression hearing, the State controverted this testimony with the
testimony of Sergeant McDaniel, who testified that appellant was neither fearful of
the officers who had transported him to the police station, nor nervous or fearful
during the interview. Sergeant McDaniel further testified that he advised appellant
of his rights twice, including his right to counsel and that appellant waived those
rights twice and never asked for his attorney or for Sergeant McDaniel to stop the
interview. The trial court viewed the videotaped confession which showed one of the
instances when Sergeant McDaniel informed appellant of his rights and appellant
waived them. When Sergeant McDaniel specifically asked appellant if he had been
threatened, made any promises, or coerced in any way, appellant answered no.

 We conclude that the trial court's findings that appellant testified that no
officer threatened him, promised him anything, or coerced him in any way prior to
making his statement, that appellant never asked for an attorney prior to giving his
statement, that appellant never requested that the interview be terminated, and that,
prior to giving the videotaped statement, appellant knowingly, intelligently, and
voluntarily waived the rights set out in article 38.22 of the Texas Code of Criminal
Procedure are all supported by the evidence in the record. See Dixon, 206 S.W.3d at
590; see also Dykes v. State, 657 S.W.2d 796, 797 (Tex. Crim. App. 1983) (holding
that an officer's advising a suspect to cooperate does not amount to coercion). These
facts establish that the taking of appellant's statement complied with article 38.22 of
the Texas Code of the Criminal Procedure and with the dictates of Miranda and that
there was no coercion or other violation of due process. See Moore, 233 S.W.3d at
44. Therefore, the trial court was within its discretion in ruling that the confession
was admissible. See Dixon, 206 S.W.3d at 590.

 We overrule appellant's first point of error.

Jury Charge

 In his second point of error, appellant argues that the jury charge was improper. 
Specifically, appellant argues that the trial court erred by instructing the jury that it
must unanimously acquit him of the greater offense before considering the lesser
included offense. The specific instruction appellant complains of stated, "Unless you
so find from the evidence beyond a reasonable doubt, or if you have a reasonable
doubt thereof, you will acquit the defendant of attempted capital murder of a peace
officer and next consider whether the defendant is guilty of aggravated assault on a
public servant."

 Standard of Review

 We review jury charge error in a two-step process. Ngo v. State, 175 S.W.3d
738, 743-44 (Tex. Crim. App. 2005). First, we determine whether error exists in the
charge. Id. at 743. If there is error, we then review the record to determine whether
sufficient harm was caused by the error to require reversal of conviction. Id. When,
as here, the charging error is not preserved, reversal is not required unless the harm
is egregious. Id. at 743-44.

 Analysis

 The type of instruction used in this case was suggested to be proper by the
Court of Criminal Appeals. See Boyett v. State, 692 S.W.2d 512, 515 (Tex. Crim.
App. 1985). In Boyett, the Texas Court of Criminal Appeals held that a jury charge
should "explicitly" instruct jurors that if they do not believe, or if they have
reasonable doubt of, an accused's guilt of a greater offense, "they should acquit" the
accused of the greater offense and "proceed to consider whether [the accused is]
guilty of a lesser-included offense." Id. Furthermore, the Boyett court stated that it
is best "to instruct the jury that if it has a reasonable doubt as to whether a defendant
is guilty of any offense defined in the charge, it will find the defendant not guilty"
and that this instruction should be located "after the last lesser included offense in the
charge." Id. at 516.

 The instruction given to the jury in this case complies with the principles set
forth in Boyett. See id. at 515-16. The jury charge explicitly stated what was
required to find appellant guilty of the charged offense, then stated, "Unless you so
find from the evidence beyond a reasonable doubt, or if you have reasonable doubt
thereof, you will acquit the defendant of attempted capital murder of a peace officer
and next consider whether the defendant is guilty of [a lesser included offense]." As
the State points out in its brief, this instruction requires post-acquittal consideration
of a lesser offense, but it does not prohibit pre-acquittal consideration of a lesser
offense. This is demonstrated by considering the instruction that follows the last
lesser included offense:

 If you believe from the evidence beyond a reasonable doubt that
the defendant is guilty of either attempted capital murder of a peace
officer or aggravated assault on a public servant on the one hand or
deadly conduct on the other hand, but you have a reasonable doubt as to
which of said offenses he is guilty, then you must resolve that doubt in
the defendant's favor and find him guilty of the lesser offense of deadly
conduct.


 If you have reasonable doubt as to whether the defendant is guilty
of any offense defined in this charge you will acquit the defendant and
say by your verdict "Not Guilty."


 This instruction clearly contemplated that the jury would consider the lesser
offense before unanimously deciding to acquit of the greater offense. The instruction
as written is incompatible with appellant's interpretation of the challenged instruction
as requiring a unanimous acquittal before considering lesser included offenses. Thus,
appellant's argument that the challenged instruction required the jury to unanimously
acquit him of the greater offense before it could consider the lesser offense is
misguided.

 Moreover, appellant overlooks the fact that the jury charge was intended to be
read as a whole. See Boyett, 692 S.W.2d at 516. The charge instructed jurors that
having a reasonable doubt of appellant's guilt of the greater offense amounted to an
acquittal of that offense and required that jurors consider the lesser offenses. The
charge then required that, if the jurors had a reasonable doubt as to whether appellant
was guilty of the greater offense or the lesser included offense, the jurors must resolve
any doubt by finding appellant guilty of the lesser offense. When read together, these
two instructions properly instructed jurors regarding the effect of their having had a
reasonable doubt as to any charged offense.

 Another reason for rejecting appellant's premise that the challenged instruction
required unanimity regarding reasonable doubt before proceeding is that the only
mention of unanimity occurred at the end of the jury charge regarding the foreman's
certification duties once the jury had "unanimously agreed upon a verdict." (2) See
Campbell v. State, 227 S.W.3d 326, 328-29 (Tex. App.--Houston [1st Dist.] 2007,
no pet.) (noting that unanimity is not mention in the charge until the language at the
end regarding the foreman's duty to certify the verdict once the jury had
"unanimously agreed"). Because there was no error in the charge we do not need to
address whether there was egregious harm. See Ngo, 175 S.W.3d at 743-44.

 We overrule appellant's second point of error.

Conclusion

 We affirm the judgment of the trial court.




 Evelyn V. Keyes

 Justice


Panel consists of Justices Taft, Keyes, and Alcala.

Publish. Tex. R. App. P. 47.2(b).
1. See Tex. Pen. Code Ann. §§ 15.01(a), 19.02(b)(1), 19.03(a)(1) (Vernon 2003 &
Vernon Supp. 2007).
2. Appellant argued that the State made an improper jury argument when it argued that
the only way the jury could consider the lesser included offense of deadly conduct
was if "you all agree[,] the 12 of you[,] that there is a reasonable doubt that
[appellant] is guilty of attempted capital murder." The State explained that they could
then consider the lesser included offenses. The State argued, "[Y]ou have to go
through those steps first . . . . Not guilty of attempted capital murder, all of you, not
guilty of aggravated assault on a public servant, all of you[,] before you get [to
considering deadly conduct]." Appellant did not preserve this complaint because he
did not make any objections to the State's jury arguments at trial. See Tex. R. App.
P. 33.1; Archie v. State, 221 S.W.3d 695, 699 (Tex. Crim. App. 2007) (holding that
a defendant must obtain an adverse ruling on his objection to jury argument in order
to preserve the error). Furthermore, appellant's trial attorney elaborated on the
instructions on the lesser included offense in his jury argument, and the jury charge
itself admonished the jury that it must be governed by the law as it is set out in "these
written instructions."