# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---

## NO. 03-19-00551-CR

---

**Mario Alberto Ruiz, Appellant**

**v.**

**The State of Texas, Appellee**

---

**FROM THE 453RD DISTRICT COURT OF HAYS COUNTY**
**NO. CR-18-1258-E, THE HONORABLE DAVID JUNKIN, JUDGE PRESIDING**

---

## M E M O R A N D U M   O P I N I O N

A jury convicted appellant Mario Alberto Ruiz of continuous sexual abuse of a child, aggravated sexual abuse of a child, and indecency with a child by sexual contact. Tex. Penal Code §§ 21.02, .11(a)(1), 22.021(a)(2)(B). The trial court sentenced Ruiz to forty-five years' confinement on count one, forty-five years' confinement on count two, and twelve years' confinement on count three. The court ordered the sentences in counts one and three to run concurrently and the sentence in count two to run consecutively to those in counts one and three. In addition, the court assessed a fine of $5,000 and ordered Ruiz to pay restitution in the amount of $2,408.20. In three issues, Ruiz complains that the trial court failed to provide a proper jury instruction, abused its discretion by denying his motion for continuance, and abused its discretion by excluding certain evidence. We will affirm the trial court's judgments of conviction.

# BACKGROUND[1]

Ruiz and Beatrice Mercado began dating in January 2015. Ruiz would spend several nights a week at Mercado's apartment in San Marcos with Mercado and her two daughters, D.H. and H.H.[2] D.H. was seven or eight years old, and H.H. was approximately five years old. Mercado and her daughters lived at the apartment for about a year, and then moved in with Mercado's brother before moving once more—to the Tuscany Park apartment complex in Buda. Ruiz would stay with Mercado and her daughters while they were at her brother's house, and he lived with them in Buda.

On July 28, 2017, H.H. called Mercado from a friend's house and accused Ruiz of having hurt her and done "adult things to her." Mercado took H.H. to Seton Hays Hospital, where she was referred by a police officer to Dell Children's Hospital. Officers called to Seton arrested Ruiz for unrelated traffic warrants. H.H. was interviewed at Dell Children's by a Sexual Assault Nurse Examiner ("SANE"), who examined H.H. and collected oral, vaginal, and anal swabs, as well as the underwear H.H. was wearing.

Officers with the Hays County Sheriff's Office ("HCSO") interviewed Ruiz, who admitted that he had placed his penis between H.H.'s labia. H.H.'s underwear and the vaginal and anal swabs tested positive for the presence of male DNA. Further testing established that Ruiz could not be excluded as a contributor to a semen stain on H.H.'s underwear.

---

[1] Because Ruiz does not challenge the sufficiency of the evidence supporting his convictions, we provide only a general overview of the facts of the case. We provide additional facts as necessary to advise the parties of the Court's decision and the basic reasons for it. *See* Tex. R. App. P. 47.1, .4.

[2] Because the children are minors, we will refer to them by their initials in the interest of privacy. *See* Tex. R. App. P. 9.10(a)(3).

In the spring of 2018, D.H. disclosed to Mercado that she too had been sexually abused by Ruiz. During the earlier investigation of H.H.'s outcry, D.H. had denied experiencing abuse. However, in separate interviews with a forensic interviewer and a victim service coordinator with the Hays County District Attorney's Office, D.H. detailed years of abuse, including several discrete incidents.

During the guilt-innocence phase of trial, the jury heard testimony from seventeen witnesses, including Mercado, H.H., and D.H. Among the evidence admitted were H.H.'s SANE kit and medical records, the forensic DNA report, and a video recording of Ruiz's interrogation. The charge issued to the jury included instructions on five lesser-included offenses with respect to count one: four instructions on aggravated sexual assault of a child—alleging various manners of offensive contact—and one instruction on indecency with a child by contact. Counts one and two of the indictment, alleging continuous sexual abuse of a child and aggravated sexual abuse of a child, respectively, pertained to H.H. Count three, alleging indecency with a child by sexual contact, pertained to D.H.

After considering the evidence and arguments of counsel, the jury found Ruiz guilty of all three counts, and the trial court sentenced him as described above. This appeal followed.

**DISCUSSION**

Ruiz raises three issues on appeal: (1) cumulative error in the jury charge "deprive[d] the jury of full consideration of the jury charge and deter[red] their proper consideration of the lesser included offenses"; (2) the trial court abused its discretion by denying Ruiz's motion for continuance; and (3) the trial court abused its discretion in allegedly "excluding

3

evidence of other potential perpetrators and evidence that [D.H. and H.H.] had been exposed to improper sexual conduct by third parties on numerous occasions."

**Jury-Charge Error**

In his first issue, Ruiz contends that the trial court erroneously instructed the jury that it must unanimously agree he was not guilty of the greater offense of continuous sexual abuse of a child before considering the lesser-included offenses. The instruction, Ruiz maintains, increased the risk that the jury would convict him of the greater offense without "proper consideration of the lesser offenses." Ruiz argues that the erroneous instruction was in turn compounded by three additional errors, namely, the trial court's failure to instruct the jury that it must: (1) acquit him on count one if it found the State had not proven the greater offense beyond a reasonable doubt; (2) resolve any doubt between the greater and lesser offenses in favor of the lesser offense; and (3) acquit him if it had a reasonable doubt as to whether he was guilty of any offense. Ruiz alleges that the "cumulative effect of these errors was to deprive the jury of full consideration of the jury charge and deter their proper consideration of the lesser included offenses."

We review alleged jury-charge error in two steps: first, we determine whether error exists; if so, we then evaluate whether sufficient harm resulted from the error to require reversal. *Arteaga v. State*, 521 S.W.3d 329, 333 (Tex. Crim. App. 2017); *Ngo v. State*, 175 S.W.3d 738, 743–44 (Tex. Crim. App. 2005). The degree of harm required for reversal depends on whether the jury charge error was preserved in the trial court. *Mendez v. State*, 545 S.W.3d 548, 552 (Tex. Crim. App. 2018); *see Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1985) (op. on reh'g) (setting forth procedure for appellate review of claim of jury charge error). If the jury charge

4

error has been properly preserved by an objection or request for instruction, *see* Tex. Code Crim. Proc. arts. 36.14, .15, reversal is required if the appellant has suffered "some harm" from the error, which means the error "was calculated to injure the rights of the defendant." *Jordan v. State*, 593 S.W.3d 340, 346 (Tex. Crim. App. 2020); *see Almanza*, 686 S.W.2d at 171.

The following exchange occurred during the charge conference in the present case:

STATE: So we can submit all the lessers in the alternative, but the jury can only convict on one of them but they can consider all of them?

THE COURT: Now, does that mean that they look through those and say, if you answer this one, yes, then you stop?

STATE: I'm asking what—what I propose if that's the case: Option 1, [O]ption 2, [O]ption 3 and so that way, they know it's an option they cannot pick all. So we add that option language. That's what I saw in the Griffin charge.

THE COURT: That seems to address at least part of your concern on that subject.

DEFENSE: My concern was the issue of Barios [sic] and that they—and this language is in there. That it says they don't have to make a final decision on the greater before they reach the lessers. It sounds like that language is in there and that language will stay in there. In terms of them having multiple lessers, it sounds like what the State is proposing there will be one verdict sheet for all the lessers, they could consider those before making a final decision on the greaters but they would only convict on the lessers and they would be laid out as different options?

STATE: Options—

DEFENSE: I would like to actually see it but I think I'm good with that as long as it complies with Barios [sic] which so far it does.

The charge instructed the jury:

If you all agree the state has failed to prove, beyond a reasonable doubt, one or more of elements 1, 2, 3, and 4 listed above, you must next consider whether the defendant is guilty of each of the lesser included offenses referred to below separately and individually.

5

To address Ruiz's concern that the instruction would impermissibly lead the jury to believe it could *only* consider the lesser-included offenses after unanimously acquitting him of the greater offense, the trial court included his requested instruction, drawing on the Court of Criminal Appeal's decision in *Barrios v. State*, 283 S.W.3d 348 (Tex. Crim. App. 2009). At Ruiz's request, the trial court instructed the jury:

> You may, at your discretion, consider the lesser included offense(s) before making a final decision as to the greater offense. If, however, you find the defendant guilty of Continuous Sexual Abuse, you should render no verdict as to a lesser included offense.

Inclusion of the *Barrios* instruction vitiates Ruiz's stated objection regarding the trial court's sequencing instruction. Barrios challenged an instruction to the jury that, if it did not find proof of capital murder beyond a reasonable doubt, it "acquit the defendant of capital murder and next consider whether the defendant is guilty of robbery," a lesser-included offense. *Id*. at 349. Barrios argued that because an acquittal is a verdict requiring unanimity, the trial court erroneously required the jury to unanimously agree that he was not guilty of capital murder before it could consider the lesser-included offense. *Id*. at 350–51. The Court, emphasizing that the jury has discretion as to the order in which it considers the parts of the jury charge, pointed to a so-called benefit-of-the-doubt instruction[3] given at trial and explained:

> [The jurors] may consider the evidence in light of the entire charge read as a whole. The trial judge reads the entire charge to the jury before it retires to deliberate; the jurors will thereby have heard the instruction on the benefit of the doubt before considering the issue of guilt on any of the offenses included in the charge. Therefore, even if, and perhaps especially if, the jurors cannot agree as to guilt on the greater offense, they have already been instructed that they may consider guilt

---

[3] Such instructions mandate that when a jury finds beyond a reasonable doubt that a defendant is guilty of an offense but entertains a reasonable doubt as to which one, it resolves the doubt in favor of the defendant and find him guilty of the lesser.

6

as to the lesser offense before deciding on a verdict as to the greater offense . . . . We hold that the charge allowed the jury to consider the entire charge as a whole and that the complained-of instruction does not require the jury to unanimously agree that a defendant is not guilty of the greater offense before considering a lesser-included offense.

*Id.* at 352–53 (internal citations and quotation marks omitted).

Ruiz's requested instruction essentially served the same function as the benefit-of-the-doubt instruction in *Barrios*. The jurors in the present case were expressly instructed that it was within their individual[4] discretion to consider the lesser-included offenses prior to the greater offense, a conclusion only to be inferred from the benefit-of-the-doubt instruction in *Barrios*. As in *Barrios*, the trial judge read the entire charge to the jurors prior to their deliberation. Ruiz's contention that the *Barrios* instruction conflicted with the trial court's initial sequencing instruction, leading to juror confusion, is similarly unavailing. As the Court noted in *Barrios*, because jurors may consider the charge as a whole and are not bound by a particular order to its parts, an instruction that "they may consider guilt as to the lesser offense before deciding on a verdict as to the greater offense" is not "mutually exclusive" with another that they "next consider" the lesser-included offense after acquitting the defendant of the greater. *Id.* Such a conclusion is, the Court found, too "narrow" an interpretation of the charge. *Id.* at 352. Likewise, there is no evidence that the jury was confused by the instructions in the present case. Therefore, in light of the trial court's inclusion of Ruiz's requested *Barrios* instruction, the jury

---

[4] To the extent Ruiz protests the trial court's use of the plural "you all" in its initial sequencing instruction, asserting that the court's word choice required unanimity in reaching a verdict on the greater offense prior to considering the lesser-included offenses, his requested *Barrios* instruction notably uses the singular, thereby correcting any error.

was not erroneously instructed that it must unanimously agree he was not guilty of the greater offense before considering the lesser-included offenses.

The additional jury-charge errors alleged by Ruiz are likewise without merit. First, citing *Boyett v. State*, Ruiz maintains that the charge should have instructed the jury to "acquit" Ruiz of the greater offense if it found that the State had not proven it beyond a reasonable doubt. 692 S.W.2d 512, 515–16 (Tex. Crim. App. 1985) (finding that charge "should have more explicitly instructed the jurors that if they did not believe, or if they had reasonable doubt of appellant's guilt of the greater offense, they should acquit appellant and proceed to consider whether appellant was guilty of the lesser included offense.") The Court of Criminal Appeals has conceded that the use of "acquit" "as it is understood in relation to delivery of a verdict is at odds with the context of the instruction, which is intended to be considered in relation to jury deliberations." *Barrios*, 283 S.W.3d at 353. The Court continues, "The inartful use of 'will acquit,' when the intended meaning seems to be 'have a reasonable doubt of or cannot agree on guilt,' could perhaps confuse a jury." *Id*. Finally, the Court in *Boyett* accepted that a near-identical charge in that case, "although not a model charge," was adequate and "essentially instructed the jurors to acquit without specifically using the word 'acquit,' by stating that if the jurors had a reasonable doubt as to the guilt of appellant to the greater offense, they should next consider the lesser included offense." *Boyett*, 692 S.W.2d at 516. Thus, the trial court's instruction here that the jury "next consider" the lesser-included offenses if it found the State failed to prove the greater offense beyond a reasonable doubt was not error.

Second, Ruiz contends that the trial court erred by failing to include a benefit-of-the-doubt instruction. "Where an offense consists of different degrees, a charge giving the defendant the benefit of a reasonable doubt between the degrees would be proper, and it would

8

be error ordinarily in such case to refuse such a charge when requested." *McCall v. State*, 14 Tex. Ct. App. 353, 363 (1883) (cited with approval by *Barrios v. State*, 283 S.W.3d 348, 352 (Tex. Crim. App. 2009)). The "general rule" has been that a court "must upon the defendant's request give the jury" such an instruction. *Benavides v. State*, 763 S.W.2d 587, 589 (Tex. App.— Corpus Christi–Edinburg 1988, pet. ref'd). However, this Court is unaware of—and Ruiz does not cite to—any authority establishing that a trial court's decision not to include a benefit-of-the-doubt instruction is error where the defendant does not request one. Ruiz did not request a benefit-of-the-doubt-instruction at trial.

Additionally, at least three of our sister courts have found that when a charge instructs a jury that, if it is not convinced beyond a reasonable doubt a defendant is guilty of the greater offense, it should acquit him of that offense and consider the lesser offense, "no further 'benefit of the doubt' instruction is necessary." *Id*.; *accord LopezGamez v. State*, 622 S.W.3d 445, 460 (Tex. App.—Fort Worth 2020, pet. ref'd) ("The absence of a benefit-of-the-doubt instruction like that in *Barrios* did not 'prevent [the jury] from considering the greater and lesser offenses together, as was sanctioned in *Barrios*,' as Appellant asserts."); *Kihega v. State*, 392 S.W.3d 828, 837 (Tex. App.—Texarkana 2013, no pet.). "Any reasonable doubt about whether the appellant is guilty of the lesser or greater offense thus results in an acquittal of the greater offense before the jury even considers the lesser offense." *Benavides*, 763 S.W.2d at 589. As discussed above, such an instruction was in essence given in this case.

Lastly, Ruiz asserts that the trial court erred by failing to instruct the jury that it "must acquit if [it] had a reasonable doubt as to whether he was guilty of any offense." Ruiz failed to request such an instruction at trial and has failed adequately to brief the issue before us; accordingly, the issue is not preserved for appellate review. *See* Tex. R. App. P. 38.1(i); *Torres*

*v. State*, 979 S.W.2d 668, 674 (Tex. App.—San Antonio 1998, no pet.) (defendant's jury-charge complaint waived because of inadequate briefing).

Regardless, the instruction given[5] in the present case is in effect the same as the one whose omission Ruiz contends was error. Failure to use the wording now requested by Ruiz was not error.

In his preceding allegations, Ruiz failed to show that the trial court erred. We overrule Ruiz's first issue.

**Motion for Continuance**

In his second issue, Ruiz contends that the trial court abused its discretion by denying his motion for continuance. He failed to preserve his claim for appellate review.

Article 29.03 of the Texas Code of Criminal Procedure provides that a "criminal action may be continued on the written motion of the State or of the defendant, upon sufficient cause shown; which cause shall be fully set forth in the motion." Tex. Code Crim. Proc. art. 29.03. Article 29.08 further mandates that all motions for continuance "be sworn to by a person having personal knowledge of the facts relied on for the continuance." *Id.* art. 29.08. The Court of Criminal Appeals has construed the statutes to require "a sworn written motion to preserve review

---

[5] The jury was instructed:

> The State must prove every element of the offense beyond a reasonable doubt to establish guilt for each offense . . . . If the State does not prove every element of the offense beyond a reasonable doubt, then you must find the defendant not guilty. If, after you have considered all of the evidence and these instructions, you have a reasonable doubt about whether the defendant is guilty, you must find the defendant not guilty.

from a trial court's denial of a motion for continuance." *Anderson v. State*, 301 S.W.3d 276, 279 (Tex. Crim. App. 2009). "[A]n unsworn oral motion preserves nothing for review." *Blackshear v. State*, 385 S.W.3d 589, 591 (Tex. Crim. App. 2012). There is no due process exception to the requirement that a motion for continuance be written and sworn to preserve the issue for appeal. *Id*.

All words, phrases, and terms in the Code are "to be taken and understood in their usual acceptation in common language, except where specially defined." Tex. Code Crim. Proc. art. 3.01. The term "sworn" is not defined. We may consult standard or legal dictionaries in determining the fair, objective meaning of undefined statutory terms, and legal dictionaries to determine the meaning of undefined legal terms. *Watkins v. State*, 619 S.W.3d 265, 272–73 (Tex. Crim. App. 2021). Black's Law Dictionary defines "Swear" as "1. To administer an oath to (a person). 2. To take an oath." *Swear*, Black's Law Dictionary (11th ed. 2019). "Oath" in turn is defined as:

> A solemn declaration, accompanied by a swearing to God or a revered person or thing, that one's statement is true or that one will be bound to a promise. The person making the oath implicitly invites punishment if the statement is untrue or the promise is broken. The legal effect of an oath is to subject the person to penalties for perjury if the testimony is false. 2. The statement or promise made in such a declaration. 3. The form of words used for such a declaration. 4. A formal declaration made solemn without a swearing to God or a revered person or thing.

*Oath*, Black's Law Dictionary (11th ed. 2019). Merriam-Webster's Dictionary likewise defines "swear," in relevant part, as "to utter or take solemnly (an oath)"; "to assert as true or promise under oath"; "to put to an oath : administer an oath to"; "to bind by an oath." Merriam-Webster's Dictionary, *Swear*, https://www.merriam-webster.com/dictionary/swear (last visited July 27, 2021). It defines "sworn statement" as "a statement that someone makes under oath and swears to

be true."  Merriam-Webster's  Dictionary,  *Swear*,  https://www.merriam-webster.com/dictionary/sworn%20statement (last visited July 27, 2021).  The Cambridge English Dictionary defines "sworn" as "formally and officially stated as being true."  Cambridge English Dictionary,  *Sworn*,  https://dictionary.cambridge.org/dictionary/english/sworn  (last  visited July 27, 2021).

We and our sister courts have similarly understood Article 29.08 to require some form of an oath, jurat, verification statement, or affidavit.  *See Medina v. State*, 986 S.W.2d 733, 737–38 (Tex. App.—Amarillo 1999, pet. ref'd) ("[O]ral motions for continuance are properly overruled if they are not in writing and under oath."); *Reese v. State*, 905 S.W.2d 631, 635–36 (Tex. App.—Texarkana 1995, pet. ref'd, untimely filed) ("The first motion for continuance does not contain language swearing to the stated facts.  The second motion does contain such a verification signed by Reese.").  The Fourteenth Court of Appeals conducted an illustrative analysis in *Woodman v. State*:

> Appellant's first motion for continuance was written, but it was not properly sworn. There was no verification or affidavit attached to the motion.  The nearest thing to a sworn statement was a single line above defense counsel's signature, which read: 'Respectfully submitted and the above facts sworn to by as true based upon information and belief.'  This statement does not qualify as an oath.  There was no jurat or declaration that counsel had made his averments under penalty of perjury.

491 S.W.3d 424, 428 (Tex. App.—Houston [14th Dist.] 2016, pet. ref'd).

Here, the motion for continuance was filed a year before its presentment to the trial court and lacked an oath, verification, attached affidavit, jurat, or similar statement.  Defense counsel merely signed the motion below the Certificate of Service.  When the State objected to the lack of verification, defense counsel had the motion stamped and signed by a notary.  Nevertheless, there is no statement or jurat declaring that the contents of the motion were subscribed and sworn

12

to before the notary or made under oath or penalty of perjury.[6]  There is likewise no avowal that the contents of the motion are true.  We do not agree with Ruiz that the notary stamp and signature "sufficiently indicated counsel's *intent* to swear to the factual statements in the motion," nor do we consider such an inquiry into the mental state of counsel appropriate.  The motion is unsworn, and Ruiz therefore failed to preserve the issue for appellate review.  We overrule his second issue.

### Exclusion of Evidence

In his third issue, Ruiz contends that the trial court abused its discretion by excluding evidence "essential to [his] defense," namely, "information regarding other potential perpetrators and the fact that the victims had been exposed to improper sexual conduct by third parties on numerous occasions" purportedly found within thousands of pages of Child Protective Services ("CPS") records.  However, the ruling Ruiz challenges was not, as he claims, on the admissibility of the evidence but was instead a grant of the State's motion in limine.  Because Ruiz did not object to the exclusion of evidence at trial, he failed to preserve the issue for appellate review.

A motion in limine "is a preliminary matter and normally preserves nothing for appellate review.  For error to be preserved with regard to the subject of a motion *in limine*, an objection must be made at the time the subject is raised during trial."  *Fuller v. State*, 253 S.W.3d 220, 232 (Tex. Crim. App. 2008); *accord Geuder v. State*, 115 S.W.3d 11, 14–15 (Tex. Crim. App. 2003) ("A trial judge's grant or denial of a motion *in limine* is a preliminary

---

[6] When denying the motion, the trial judge stated, "[S]omebody has to swear or verify that the facts are true and correct.  I don't see that in here but if we assumed that that's what this signature is, I think based on the procedural status as it stands right now, I'm going to deny the Motion For Continuance."

ruling only and normally preserves nothing for appellate review."); *see Gonzales v. State*, 685 S.W.2d 47, 50 (Tex. Crim. App. 1985) (stating that "[f]or error to be preserved with regard to the subject matter of the motion *in limine* it is absolutely necessary that an objection be made at the time when the subject is raised during trial"); *Brazzell v. State*, 481 S.W.2d 130, 131 (Tex. Crim. App. 1972) ("Generally, a motion in limine will not preserve error to the admission of inadmissible evidence.") The purpose of a motion in limine "is to prevent matters from coming before the jury"; such a motion is "by its nature . . . subject to reconsideration by the court throughout the course of the trial. This is because it may not be enforced to exclude properly admissible evidence." *Norman v. State*, 523 S.W.2d 669, 671 (Tex. Crim. App. 1975).

Prior to an outcry hearing on the first day of trial, the State advised the trial court that "there were some matters in the Motion in Limine we may want to take up before opening statements." The defense disagreed, and the matter was dropped. Later, during its opening statement, the defense referenced "over 6,000 pages of CPS records," to which the State responded, "Judge, this is subject to a Motion in Limine." The following colloquy then occurred:

> STATE: Judge, I specifically requested that there be no mention of CPS records and that is exactly what [the defense is] about to get into.
>
> DEFENSE  I don't believe it was ruled on.
>
> STATE: I'm asking for a ruling right now then. I asked if y'all were going to get into anything that was part of my Motion in Limine in opening statement and you said, no.
>
> DEFENSE: I don't believe that's true, not getting into it in opening and we can take up the Motion in Limine before the evidence came in.
>
> STATE: If we need to have a hearing on the CPS records, let's have a hearing.
>
> DEFENSE: Let's have a hearing.

14

Then, outside the presence of the jury, the State argued that the motion "would go for any specific instances of conduct or any admissible evidence or anything that is irrelevant" in the CPS records. When asked by the trial court why the records should come in, the defense responded, "We are not asking that the records be submitted as a defense exhibit," instead arguing that reference to the contents of the records was relevant to rebut what the defense perceived to be the State's theory—that "there is nobody else that could have imparted these children with the sexual knowledge necessary for them to have outcried the way they did." The defense asked the trial judge for permission "to at least reference the fact that these children are mentioned in 6,000 pages of CPS records." The State once more urged that "[a]ny attempts to bring . . . up" the records would be improper impeachment, irrelevant, and prejudicial. The trial court then made its ruling:

> I'm going to grant the Motion in Limine . . . . I'm going to grant the Motion in Limine at this point. I don't think it's relevant, but I do recognize that that may change as the evidence is presented so I'm going to grant the Motion in Limine and ask you not discuss it in opening statements and then we will see if it comes around as the case proceeds.

Neither the records nor their contents were referenced by either side during the trial, with the exception of the defense's being permitted on cross-examination to ask Mercado whether she allowed her children to live with a brother of hers who is a registered sex offender.[7] Even then, the trial judge stated that he did not believe it would be in violation of the motion in limine to do so.[8]

---

[7] When asked whether she had said that she allowed her children to live with her brother, Robert, Mercado clarified that she had been speaking of her other brother, Alex, and that at no point had the children lived with Robert, who, she explained, "has been in prison for ten years."

[8] The trial judge explained, "I don't think it's a violation of the Motion in Limine. Those were CPS records."

The motion in limine was revisited once more prior to closing arguments. Noting that "you [the trial judge] granted a Motion in Limine on" "extraneous matters as to other things that may have happened to the complainants," the defense made a second motion in limine that the State not be permitted to make a representation that "nothing else has ever happened to these girls," which the trial court granted.

Ruiz's contention that "[a]lthough couched in terms of a ruling on the Motion in Limine, the court's ruling was actually a ruling on the merits that the evidence was not admissible on relevancy grounds" is therefore demonstrably refuted by the record. During opening arguments and outside the presence of the jury, the trial judge stated, "we are taking up at least one issue on [the] Motion in Limine." Both sides—and the trial judge—repeatedly referenced the motion in that hearing, at the bench prior to the cross-examination of Mercado, and during the hearing on the defense's motion in limine prior to closing arguments. The defense conceded that it was not trying to have the CPS records submitted as an exhibit. Indeed, in the hearing on the defense's motion in limine, defense counsel expressly conceded that the trial judge had granted a motion in limine with respect to the contents of the CPS records. Consequently, because Ruiz did not object to the trial court's grant of the State's motion in limine at trial, he failed to preserve the issue for appellate review. We overrule his third issue.

## CONCLUSION

Having overruled each of Ruiz's issues, we affirm the trial court's judgments of conviction.

16

_____

Edward Smith, Justice

Before Justices Goodwin, Kelly, and Smith

Affirmed

Filed:   July 30, 2021

Do Not Publish